2006 UT 4

**STATE of Utah, Plaintiff and Appellee,**

v.

**Carl Alton WINFIELD, Defendant and Appellant.**

**No. 20040382.**

Supreme Court of Utah.

Jan. 13, 2006.

Mark L. Shurtleff, Att'y Gen., Marian Decker, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Joan C. Watt, Kent R. Hart, Salt Lake City, for defendant.

PARRISH, Justice:

## INTRODUCTION

¶ 1 Defendant Carl Alton Winfield appeals his conviction for aggravated robbery, arguing that (1) the trial court's voir dire examination was inadequate to ensure an impartial jury, and (2) the evidence presented at trial was insufficient to support his conviction. We conclude that Winfield invited the alleged error in jury selection when he affirmatively passed the jury for cause and accordingly decline to review that claim. We similarly

decline to review Winfield's claim that the evidence was insufficient to support his conviction because he failed to preserve that claim in the trial court.

## BACKGROUND

¶2 "On appeal from a jury verdict, we view the evidence and all reasonable inferences in a light most favorable to that verdict and recite the facts accordingly." *State v. Pinder,* 2005 UT 15, ¶2, 114 P.3d 551 (internal quotation marks omitted).

¶3 Winfield entered the employees-only building of a Sonic Drive–In restaurant in Salt Lake County, Utah.[1] At least three employees were inside the building at the time. One of the employees, a carhop, was standing a few feet from the entrance, with her back to the door. The assistant manager was seated at a desk where she was busy sorting the carhop's cash and receipts as part of a routine checkout procedure. In her lap was a bank bag containing cash.

¶4 Winfield approached the carhop from behind, pressed either his finger, his hand, or another hard object into her right side above her hip and verbally demanded that she give him all of the money. Maintaining pressure in her side, Winfield moved the carhop forward in the direction of the desk, repeating his demand for the money. Winfield then snatched the bank bag from the assistant manager's lap, turned away, and fled the scene. The assistant manager immediately contacted police, who located Winfield shortly thereafter.

¶5 Winfield was subsequently arrested and charged with aggravated robbery. At a preliminary hearing, Winfield elected to forgo appointed representation and proceeded pro se. Following the hearing, the trial court bound Winfield over for trial on the aggravated robbery charge. Winfield filed a timely motion to quash the bindover, arguing that there was insufficient evidence to establish aggravated robbery. The trial court denied the motion and set the matter for trial.

¶6 On the first day of trial, the trial judge questioned Winfield to determine whether he wanted to continue pro se. After Winfield responded affirmatively and indicated that he felt competent to do so, the trial judge began the process of jury selection. He began by asking questions designed to examine each prospective juror's ability to serve impartially. Questions included whether any prospective juror or any of the jurors' immediate family members or close friends (1) was or knew someone who was a sworn law enforcement officer, (2) had been accused of a crime, or (3) had been the victim of a crime similar to the one with which Winfield was charged. Seven of the eight jurors who ultimately sat on the jury gave at least one affirmative response. Two jurors responded that they had been victims of a similar crime, two jurors indicated that they had family members who had been convicted of a serious crime, two jurors stated that they had either committed crimes themselves or been accused of committing a crime, two other jurors indicated that they had close familiarity with law enforcement, and one juror stated that she was a victim's rights advocate.

¶7 The trial court followed up with six of the seven responding jurors, asking them to explain the nature and time period of their experiences and whether the experiences would cause them to favor one side over the other. After elaborating on their experiences, each of these six jurors ultimately declared that he or she could be fair and impartial if selected to serve on the jury, and the trial judge accepted their responses without further questioning. The trial court failed to ask any follow-up questions of the seventh juror, but Winfield did not object, nor did he request any additional questioning of that juror.

¶8 Before concluding voir dire, the trial judge asked Winfield if he had any additional questions for the jury panel. Winfield responded affirmatively, asking the court to inquire into one juror's law enforcement background. The trial judge allowed the additional questioning, and Winfield found

---

1. Sonic Drive–Ins are somewhat unique in that the buildings are used only for food preparation and related business operations. Patrons do not enter the buildings, but remain in their vehicles, where they are served by carhops.

the juror's response satisfactory. The trial judge then asked if Winfield found the collective panel from which his jury would be selected to be acceptable. Winfield responded, "Absolutely," and declined to use any of his four available peremptory challenges, stating, "The defense concedes to the jury selection." At the conclusion of voir dire, Winfield again stated, "Let the record reflect that I have conceded to the jury selection."

¶ 9 Following the presentation of evidence but before the jury left to deliberate, Winfield inquired regarding a document that had been placed on the table in front of him. The document was entitled "Findings of Fact, Conclusions of Law and Order." The trial judge explained that the document reflected the court's written order denying Winfield's motion to quash the bindover following the preliminary hearing and indicated that the order had been delivered to him at trial because he had previously refused to approve it as to form. Winfield relied on the order in objecting to a jury instruction that included a charge of the lesser included offense of robbery. The trial court overruled Winfield's objection to the inclusion of such an instruction. At this time, Winfield also moved for a directed verdict, claiming that there was insufficient evidence to demonstrate that he had taken any money from the restaurant. The trial court denied that motion.

¶ 10 The jury returned a verdict of guilty on the charge of aggravated robbery. Winfield waived his right to a pre-sentence investigation and hearing and was sentenced immediately.

¶ 11 Winfield, acting with the assistance of legal counsel, filed a timely notice of appeal with this court. We initially transferred his appeal to the Utah Court of Appeals, but recalled the case in order to hear it in conjunction with two other cases involving similar issues, *State v. King*, 2006 UT 3, 131 P.3d 202, and *State v. Lee*, 2006 UT 5, 128 P.3d 1179.

## ANALYSIS

¶ 12 Winfield urges us to reverse his conviction for two reasons. Winfield first argues that he is entitled to a new trial because the trial court's voir dire examination was inadequate to ensure an impartial jury. Second, Winfield argues that the evidence presented at trial was insufficient to support his conviction for aggravated robbery because there was no evidence that he used a dangerous weapon. We discuss each issue in turn.

## I. JURY BIAS

¶ 13 Winfield first claims that the trial court committed reversible error by failing to fully probe seven of the eight jurors who were ultimately empaneled. We hold that the doctrine of invited error prevents us from reaching the merits of this claim because Winfield affirmatively represented to the trial court that he had no objection to the jury panel.

¶ 14 "Generally speaking, a timely and specific objection must be made [at trial] in order to preserve an issue for appeal." *State v. Pinder*, 2005 UT 15, ¶ 45, 114 P.3d 551; *see also State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346. When a party raises an issue on appeal without having properly preserved the issue below, "we require that the party articulate an appropriate justification for appellate review," *Pinder*, 2005 UT 15, ¶ 45, 114 P.3d 551; specifically, the party must argue either " 'plain error' " or " 'exceptional circumstance.' " *Id.* (quoting *State v. Pledger*, 896 P.2d 1226, 1229 n. 5 (Utah 1995)); *accord State v. Nelson–Waggoner*, 2004 UT 29, ¶ 16, 94 P.3d 186. But under the doctrine of invited error, we have declined to engage in even plain error review when "counsel, either by statement or act, affirmatively represented to the [trial] court that he or she had no objection to the [proceedings]." *State v. Hamilton*, 2003 UT 22, ¶ 54, 70 P.3d 111; *accord Pinder*, 2005 UT 15, ¶ 62, 114 P.3d 551; *State v. Geukgeuzian*, 2004 UT 16, ¶ 9, 86 P.3d 742.

¶ 15 Our invited error doctrine arises from the principle that " 'a party cannot take advantage of an error committed at trial when that party led the trial court into committing the error.' " *Geukgeuzian*, 2004 UT 16, ¶ 9, 86 P.3d 742 (quoting *State v. Anderson*, 929 P.2d 1107, 1109 (Utah 1996));

*accord Pinder*, 2005 UT 15, ¶ 62, 114 P.3d 551; *Hamilton*, 2003 UT 22, ¶ 54, 70 P.3d 111. By precluding appellate review, the doctrine furthers this principle by "discourag[ing] parties from intentionally misleading the trial court so as to preserve a hidden ground for reversal on appeal." *Geukgeuzian*, 2004 UT 16, ¶ 12, 86 P.3d 742 (internal quotation marks omitted). Encouraging counsel to actively participate in all proceedings and to raise any possible error at the time of its occurrence " 'fortifies our long-established policy that the trial court should have the first opportunity to address a claim of error.' " *Hamilton*, 2003 UT 22, ¶ 54, 70 P.3d 111 (quoting *Anderson*, 929 P.2d at 1109).

¶ 16 Affirmative representations that a party has no objection to the proceedings fall within the scope of the invited error doctrine because such representations reassure the trial court and encourage it to proceed without further consideration of the issues. *See State v. Medina*, 738 P.2d 1021, 1023 (Utah 1987) ("[T]he fact remains that counsel consciously chose not to assert any objection that might have been raised and affirmatively led the trial court to believe that there was nothing wrong with the instruction."). Although this court has yet to apply the invited error doctrine to a claim of error during voir dire, our prior use of the doctrine fully supports the application of invited error in the voir dire context.[2] *See Anderson*, 929 P.2d at 1109 ("[A] party cannot take advantage of an error committed at trial when that party led the trial court into

committing the error."); *Geukgeuzian*, 2004 UT 16, ¶ 9, 86 P.3d 742 (same).

¶ 17 Because trial judges often ask counsel to pass jury panels for cause, we acknowledge that application of the invited error doctrine may severely limit appellate challenges to the adequacy of voir dire.[3] But we find no reason to create a special exemption for such challenges.[4] During jury selection, it is generally "a simple matter to obviate any problem of bias simply by excusing the prospective juror and selecting another." *Jenkins v. Parrish*, 627 P.2d 533, 536 (Utah 1981), *overruled on other grounds by State v. Menzies*, 889 P.2d 393 (Utah 1994). Accordingly, "the principle of refusing to sanction invited error" is particularly compelling in the "jury selection context."[5] *State v. Litherland*, 2000 UT 76, ¶ 32, 12 P.3d 92.

¶ 18 Here, Winfield responded to the trial court's query regarding the acceptability of the jury panel by stating that he "[a]bsolutely" found the panel acceptable and agreed to have the jury selected therefrom. His acceptance of the jury panel is further highlighted by his later unsolicited statement that "[t]he [d]efense concedes to the jury selection." These affirmative representations fall squarely within the scope of our established invited error doctrine.

¶ 19 Winfield asks us to excuse him from the invited error doctrine because he was acting pro se. Our approach to pro se litigants seeks to balance the procedural demands of litigation and the rights of unrepresented parties. " '[A]s a general rule, a party who represents himself will be held to the same standard of knowledge and practice

2. We note the application of the invited error doctrine to a claim of erroneous voir dire in *State v. Lee*, 2006 UT 5, ¶ 20, 128 P.3d 1179, issued concurrently with this case.

3. When asked to pass a jury panel for cause, counsel must either object or provide an affirmative representation of consent. Consequently, claims of error in jury selection will often be precluded under the invited error doctrine. We note, however, that plain error review may be appropriate even in the face of an affirmative representation by counsel in situations where "a juror expresses a bias or conflict of interest so strong or unequivocal as to inevitably taint the trial process." *State v. Litherland*, 2000 UT 76, ¶ 32, 12 P.3d 92. Moreover, we may elect not to

apply invited error when an appellee fails to raise it. *E.g.*, *King*, 2006 UT 3, ¶ 15.

4. In *King*, we noted that voir dire is not fundamentally distinct from other trial court proceedings and therefore should not be exempt from generally applicable standards of review. 2006 UT 3, ¶ 18, 131 P.3d 202.

5. Going hand in hand with our application of the invited error doctrine to claims that the trial court erred in conducting voir dire is our instruction to trial courts that they should "err on the side of caution in ruling on for-cause challenges." *State v. Saunders*, 1999 UT 59, ¶ 51, 992 P.2d 951.

as any qualified member of the bar.'" *Lundahl v. Quinn*, 2003 UT 11, ¶ 3, 67 P.3d 1000 (quoting *Nelson v. Jacobsen*, 669 P.2d 1207, 1213 (Utah 1983)). Nevertheless, "'because of his lack of technical knowledge of law and procedure [a layman acting as his own attorney] should be accorded every consideration that may reasonably be indulged.'" *Id.* (quoting *Nelson*, 669 P.2d at 1213).

¶ 20 In this case, Winfield's decisions during voir dire can hardly be accredited to a lack of technical knowledge of law and procedure. While Winfield is not an attorney, he had previously defended himself in another trial and appeared to have a reasonable knowledge of his rights and of trial procedure. Indeed, during voir dire, Winfield effectively made a for-cause challenge to a potential juror, requested additional questioning of another potential juror, and even objected to the trial court's repeated use of the term "overabundance of caution" when striking potential jurors from the panel for cause. We therefore decline Winfield's invitation that we disregard the invited error doctrine because of his pro se status.

¶ 21 In summary, Winfield's affirmative representations regarding the acceptability of the jury panel invited the trial court to proceed without further questioning of the panel and without removing any additional jurors for cause. If the trial court's administration of voir dire constituted error, that error was invited by Winfield. We therefore decline to review his claim of inadequate voir dire.

## II. SUFFICIENCY OF THE EVIDENCE

¶ 22 Winfield next argues that there was insufficient evidence to convict him of aggravated robbery because there was no evidence that he had a dangerous weapon. Winfield was convicted under Utah's aggravated robbery statute, Utah Code Ann. § 76–6–302 (2003). That statute incorporates the definition found in the general provisions of the Utah Criminal Code, which defines a "dan-

gerous weapon" as "any item capable of causing death or serious bodily injury" or "a facsimile or representation" of such an item. Utah Code Ann. § 76–1–601(5) (2003).

¶ 23 The State argues that we cannot consider Winfield's insufficiency claim because Winfield failed to raise it in the trial court. As noted in our analysis of Winfield's voir dire claim, "'[u]nder ordinary circumstances, we will not consider an issue brought for the first time on appeal unless the trial court committed plain error or exceptional circumstances exist.'" *State v. Pinder*, 2005 UT 15, ¶ 45, 114 P.3d 551 (quoting *State v. Nelson–Waggoner*, 2004 UT 29, ¶ 16, 94 P.3d 186); *accord Monson v. Carver*, 928 P.2d 1017, 1022 (Utah 1996). Because Winfield argued neither plain error nor exceptional circumstances in his brief on appeal, review is available only if the issue was adequately preserved.[6] *See Carver*, 928 P.2d at 1022. We find that it was not.

¶ 24 Winfield argues that he preserved his sufficiency claim by filing a pretrial motion to quash his bindover for trial. He also argues that he preserved the claim during his discussion with the trial court following the delivery of the court's written order denying his motion to quash. We disagree on both counts.

¶ 25 First, we conclude that Winfield's pretrial motion to quash his bindover was insufficient to preserve his claim regarding the sufficiency of the evidence at trial. There is a disparity between the standards of proof for a pretrial motion to quash a bindover based on insufficient evidence and an objection to the sufficiency of the evidence following a trial. To defeat a pretrial motion to quash, "the prosecution is not required to introduce enough evidence to establish the defendant's guilt beyond a reasonable doubt, but must present a quantum of evidence sufficient to warrant submission of the case to the trier of fact." *State v. Talbot*, 972 P.2d 435, 437 (Utah 1998) (internal quotation marks omitted). In contrast, to overturn a conviction based on insufficient evidence, a

6. In his brief, Winfield argues simply that the prosecution presented insufficient evidence to prove that he represented a gun as defined under the law. While it is possible that Winfield con-

templated plain error review, he never uses such language, despite specifically arguing plain error in his previous voir dire claim. We therefore will not infer a plain error argument.

**1178**

court must find that "the evidence is sufficiently inconclusive or inherently improbable such that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime." *State v. Holgate,* 2000 UT 74, ¶ 18, 10 P.3d 346 (internal quotation marks omitted).

¶ 26 Because a bindover determination requires less evidence than a conviction, there is an inference that any flaw in a bindover determination is necessarily " 'cured if the defendant is later convicted beyond a reasonable doubt.' " *Thomas v. State,* 2002 UT 128, ¶ 7, 63 P.3d 672 (quoting *State v. Quas,* 837 P.2d 565, 566 (Utah Ct. App.1992)). A party must therefore renew any sufficiency objection at trial to inform the trial court of his claim that the evidence presented *at trial* is insufficient to support a conviction.[7] Winfield failed to do so, and we accordingly hold that his pretrial motion to quash his bindover for trial did not preserve his objection that there was insufficient evidence to support his conviction.

¶ 27 Winfield's second attempt to establish preservation also fails. Winfield asserts that his conversation with the trial court regarding the "Findings of Fact and Conclusions of Law and Order" was adequate to preserve his sufficiency claim. But a review of that conversation reveals that it lacked the requisite specificity. Generally speaking, "a timely and *specific* objection must be made in order to preserve an issue for appeal." *Pinder,* 2005 UT 15, ¶ 45, 114 P.3d 551 (emphasis added); *accord State v. Whittle,* 780 P.2d 819, 820–21 (Utah 1989). "This specificity requirement arises out of the trial court's need to assess allegations by isolating relevant facts and considering them in the context of the specific legal doctrine placed at issue." *State v. Brown,* 856 P.2d 358, 361 (Utah Ct.App.1993); *see also State*

*v. Elm,* 808 P.2d 1097, 1099 (Utah 1991). Any references Winfield may have made to the insufficiency of evidence presented at trial were so cryptic and vague that they did not satisfy the specificity requirement.[8] We accordingly conclude that Winfield failed to preserve his sufficiency objection for appeal.

¶ 28 Winfield urges us to overlook any deficiency in the preservation of his sufficiency claim because he appeared pro se. For the same reasons addressed above in connection with Winfield's claim of jury bias, we find that Winfield's pro se status did not obviate his duty to preserve his objections. We therefore decline to review the sufficiency of the evidence.

## CONCLUSION

¶ 29 Because Winfield invited any error committed during voir dire and failed to preserve his challenge to the sufficiency of the evidence, we do not reach the merits of either claim. We therefore affirm Winfield's conviction.

¶ 30 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice NEHRING concur in Justice PARRISH's opinion.

---

**7.** We note the distinction between the type of pretrial motion at issue in this case and a pretrial motion to suppress evidence. In cases involving motions to suppress, " 'a defendant [is not required] to object or to renew his motion to suppress at trial where the trial judge is also the judge who ruled on the pretrial motion.' " *State v. Hansen,* 2002 UT 114, ¶ 20, 61 P.3d 1062 (quoting *State v. Johnson,* 748 P.2d 1069, 1071 (Utah 1987)). In contrast to pretrial motions challenging the sufficiency of the evidence, motions to suppress are not complicated by differing standards of review governing pretrial and postconviction objections.

**8.** Winfield relied on the written order denying his motion to quash in connection with his objection to a jury instruction relating to a lesser included offense. But the record does not reflect any objection to the sufficiency of the evidence regarding the dangerous weapon statute.