2009 UT 21

**HOGS R US, a Utah corporation; Scott C. McLachlan, an individual; Utah Valley Turf Farms, L.C., a Utah limited liability company; Ault Farms, LLC, a Utah limited liability company; Zane Dansie, an individual; and Keith Jonsson, an individual, Plaintiffs and Appellants,**

v.

**TOWN OF FAIRFIELD, Defendant and Appellee.**

**No. 20070872.**

Supreme Court of Utah.

April 14, 2009.

Joseph C. Rust, Scott O. Mercer, Salt Lake City, for appellants Hogs R Us, Scott C. McLachlan, Zane Dansie, and Keith Jonsson.

Mark H. Richards, Salt Lake City, for appellants Utah Valley Turf Farms, L.C., and Ault Farms, LLC.

Larry S. Jenkins, Salt Lake City, for appellee.

Paul W. Mortensen, Salt Lake City, for amicus Utah Shared Access Alliance.

Steve C. Earl, Orem, Robert J. Moore, James L. Wilde, Provo, for amici City of Orem, Utah County, and Provo City.

PARRISH, Justice:

## INTRODUCTION

¶ 1 Appellants seek reversal of the district court's decision declining to issue an extraordinary writ compelling the town of Fairfield to maintain a road located within the town. Because the town does not have a clear legal duty to maintain its roads, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Since its incorporation in late 2004, Fairfield, a small agrarian town located in the south-central section of Cedar Valley in western Utah County, has conducted limited maintenance on the road known as 1600 North Street (the "Road"), which runs through its town limits between State Road 73 and 16000 West. Specifically, Fairfield has maintained only the portion of the road located within the residential area of the town. The parties do not dispute that the Road is a Class C road under the Utah Transportation Code, meaning its maintenance is under Fairfield's jurisdiction. *See* Utah Code Ann. § 72–3–104.

¶ 3 Appellants (the "Farmers"), individuals and businesses engaged in farming operations immediately east of Fairfield, use the Road as primary access to their land. Only one of the Farmers owns property within Fairfield's town limits. The Farmers' only alternative route to their land is rougher and narrower than the Road and has sharp edges that result in extensive tire damage. None of the Farmers find the alternative route to be an acceptable way to access their properties.

¶ 4 As a result of Fairfield's failure to maintain the Road, its condition has deteriorated significantly. Poor conditions on the Road have at times forced the Farmers to take the alternative route to their land, and vendors have refused to continue delivery of supplies to one of the Farmers due to the deterioration of the Road. Although the Farmers have offered to contribute to the cost of repairing and maintaining the road, particularly the section containing a danger-ous S-turn, Fairfield has declined their offers.

¶ 5 In conjunction with a challenge to a municipal ordinance limiting the weight of vehicles using the Road, the Farmers sought extraordinary relief under Utah Rule Civil Procedure 65B(d)(2)(B) compelling Fairfield to maintain the Road. The district court denied relief because it found that, under Utah Code section 10–8–8, Fairfield had total discretion with regard to improvements and repairs. On appeal, the Farmers argue that summary judgment should be reversed because Fairfield has a clear duty to maintain the Road. They ask this court to issue an extraordinary writ compelling Fairfield to fulfill this duty. Fairfield argues that the Farmers do not have standing to request extraordinary relief. Fairfield further argues that the district court correctly denied extraordinary relief because the Farmers did not satisfy the standard for issuing an extraordinary writ and because the courts do not have the authority to mandate that municipalities repair their roads.

## STANDARD OF REVIEW

¶ 6 While the decision to grant or deny extraordinary relief is within the district court's discretion, we review "the legal reasoning of the court" for correctness. *V–1 Oil Co. v. Dept. of Envtl. Quality*, 939 P.2d 1192, 1195 (Utah 1997).

## ANALYSIS

I. THE FARMERS HAVE STANDING TO PETITION FOR EXTRAORDINARY RELIEF UNDER UTAH RULE OF CIVIL PROCEDURE 65B

¶ 7 For the first time on appeal, Fairfield argues that the Farmers lack standing to bring an action for an extraordinary writ under Utah Rule of Civil Procedure 65B. Specifically, Fairfield alleges that the Farmers have no " 'distinct and palpable injury that gives [them] a personal stake in the outcome of the legal dispute.' " *Terracor v. Utah Bd. of State Lands & Forestry*, 716 P.2d 796, 799 (Utah 1986) (quoting *Jenkins v. Swan*, 675 P.2d 1145, 1149 (Utah 1983)). "A petitioner for extraordinary relief must have

standing, just as any other litigant must have." *Terracor,* Id. at 798. Because lack of standing is jurisdictional, parties may raise it as an issue at any time in the proceedings, including on appeal. *Harris v. Springville City,* 712 P.2d 188, 190 (Utah 1986); *see also Terracor,* 716 P.2d at 798 ("[T]his Court may address [standing] sua sponte.").

¶ 8 "[T]here are two means by which a party can establish standing—the traditional test and an alternative test." *Utah Chapter of the Sierra Club v. Utah Air Quality Bd.,* 2006 UT 74, ¶ 18, 148 P.3d 960. Under the traditional test, a party has standing if it meets three requirements:

> First, the party must assert that it has been or will be "adversely affected by the [challenged] actions." Second, the party must allege a causal relationship "between the injury to the party, the [challenged] actions and the relief requested." Third, the relief requested must be "substantially likely to redress the injury claimed."

*Id.* ¶ 19 (internal citations omitted) (alterations in original) (quoting *Jenkins,* 675 P.2d at 1149–50). "Traditional standing criteria require that the interests of the parties be adverse and that the party seeking relief have a legally protectable interest in the controversy." *State ex rel. H.J. v. State,* 1999 UT App 238, ¶ 17, 986 P.2d 115 (internal quotation marks omitted).

¶ 9 If a party does not satisfy the traditional test, the court may nonetheless grant standing to an appropriate party if the issues asserted are "of sufficient public importance to balance the absence of the traditional standing criteria." *Sierra Club,* 2006 UT 74, ¶ 41, 148 P.3d 960. A party is appropriate if it demonstrates "the interest necessary to effectively assist the court in developing and reviewing all relevant legal and factual questions and that the issues are unlikely to be raised if the party is denied standing." *Id.* ¶ 36 (internal quotation marks omitted).

¶ 10 Although Fairfield argues that the Farmers have not established or alleged any facts showing that they suffered a particularized injury directly resulting from the condition of the Road, the record clearly contradicts this assertion. The district court found that Fairfield's failure to maintain the road adversely affects the Farmers by forcing them to take an alternate route, by damaging their vehicles, and by making vendors unwilling to deliver goods to their farms. Further, the alternative route was not acceptable to any of the Farmers. Clearly, the Farmers have met all three prongs of the test. First, they have been adversely affected by Fairfield's failure to act. Second, Fairfield's failure to maintain the Road is the cause of the Farmers' injuries. And finally, an order requiring Fairfield to maintain the Road would redress those injuries. Fairfield emphasizes the prudential element to standing, but there is no authority that allows the court to deny a plaintiff the chance to be heard when it has met the above three elements. Thus, we conclude that the Farmers have standing to seek extraordinary relief to compel Fairfield to maintain its roads.

## II. THE DISTRICT COURT PROPERLY DENIED THE FARMERS' PETITION FOR EXTRAORDINARY RELIEF BECAUSE IT HAD NO AUTHORITY TO COMPEL THE TOWN TO MAINTAIN THE ROAD

¶ 11 Under Utah Rule Civil Procedure 65B(d)(2)(B), extraordinary relief may be granted "where an inferior court, administrative agency, corporation or person has failed to perform an act required by law as a duty of office, trust or station." Utah R. Civ. P. 65B(d)(2)(B). Though Rule 65B abolished the "common law forms and pleadings for extraordinary writs," the remedies available through the use of those writs continue to be available under Rule 65B. *State v. Barrett,* 2005 UT 88, ¶ 7 n. 4, 127 P.3d 682. In particular, rule 65B(d) is the equivalent of a common law petition for a writ of mandamus and provides the equivalent remedy. *Id.* ¶¶ 7 n. 4, 11. "The common law writ of mandamus was designed to compel a person to perform a legal duty incumbent on him by virtue of his office or as required by law." *Renn v. Bd. of Pardons,* 904 P.2d 677, 682 (Utah 1995). A citizen can seek extraordinary relief "to compel an officer or town officials to perform a duty, a ministerial act or an administrative act, about which it would have no discretion," or to compel officers or town officials to exercise their discre-

tion when they have refused to act. *Rose v. Plymouth Town*, 110 Utah 358, 173 P.2d 285, 286 (1946); *see also Rice v. Taggart*, 2004 UT App 215, ¶ 7, 95 P.3d 1169. Though a plaintiff may request the district court to direct the exercise of discretionary action, "the writ is *not* available to direct the exercise of judgment or discretion *in a particular way.*" *Rice*, 2004 UT App 215, ¶ 7, 95 P.3d 1169 (internal quotation marks omitted). "[E]xtraordinary writs are available only when there is no 'plain, speedy and adequate remedy' at law." *Renn*, 904 P.2d at 682 (quoting Utah R. Civ. P. 65B(a)). Extraordinary relief for a failure to maintain a road will only lie if "refusal to act is the result of a determination not to discharge a plain duty, rather than a mistaken judgment as to the existence of the necessity for acting." 52 Am.Jur.2d *Mandamus* § 217.

¶ 12 In order to obtain extraordinary relief under rule 65B(d), a petitioner must establish two things: (1) "a clear legal right to the performance of the act demanded," and (2) "a plain duty of the officer, board, or other tribunal to perform as demanded." *Garcia v. Jones*, 29 Utah 2d 409, 510 P.2d 1099, 1100 (1973) (internal quotation marks omitted). Even if a petitioner can meet both prongs of the test, the court has the discretion to deny extraordinary relief. *Renn*, 904 P.2d at 683. To determine whether to grant relief, "a court must look to the nature of the relief sought, the circumstances alleged in the petition, and the purpose of the type of writ sought." *Barrett*, 2005 UT 88, ¶ 11, 127 P.3d 682 (internal quotation marks omitted).

¶ 13 At issue in this case is whether Fairfield has a plain duty to maintain the roads within its jurisdiction. If so, then those who travel the roads have a clear right to performance of that duty. A duty underlying Rule 65B extraordinary relief can be created by statute or found in the common law. *State ex rel. Skeen v. Ogden Rapid Transit Co.*, 38 Utah 242, 112 P. 120, 124 (1910) (holding that if common law duty is "clear and reasonably free from doubt" then the court can coerce the performance of the duty through mandamus).

¶ 14 We first address whether any statute creates a clear legal duty for Fairfield to maintain its roads. We then consider whether the common law has established such a duty.

### A. No Statute Gives Municipalities a Clear Legal Duty to Maintain the Roads Located Within Their Boundaries

¶ 15 Both Fairfield and the Farmers point to various sections of the Utah Code as evidence of the existence or lack of a municipal duty to maintain roads. "When interpreting statutes, this court first looks to the plain language." *Barrett*, 2005 UT 88, ¶ 29, 127 P.3d 682. We find that the plain language of the Utah Code neither creates nor refutes an affirmative duty for municipalities to maintain the streets located within their boundaries.

¶ 16 The Farmers argue that the duty to maintain roads is found in Utah's Transportation Code, located in title 72 of the Utah Code. Utah Code section 72–3–104(4)–(5)(Supp.2008) gives "sole jurisdiction and control of the city streets within the municipality" to the municipal governing body, and requires the Department of Transportation to cooperate with that body in the "construction and maintenance" of class C roads. The Farmers argue that this language in the Transportation Code creates in municipalities an implicit duty to maintain roads within their jurisdiction. But the plain language of the statute says nothing about the duty of municipalities. Rather, it only imposes a duty on the Utah Department of Transportation to cooperate with municipal governing bodies in maintaining and constructing roads. The Farmers further cite the Transportation Code for definitions of "maintenance" and "improvement project," but these sections merely define the terms as used in the statute; they do not by themselves impose a municipal duty to maintain roads. Utah Code Ann. § 72–6–109(c)–(d).

¶ 17 Fairfield argues—and the district court agreed—that Utah Code section 10–8–8 gives Fairfield sole discretion to "make decisions regarding improvement and repairs" of municipal roads. Section 10–8–8 provides, "A municipal legislative body may lay out, establish, open, alter, widen, narrow, extend, grade, pave, or otherwise improve

streets, alleys, avenues, [and] boulevards ... and may vacate the same parts thereof, as provided in this title." *Id.* § 10–8–8 (2007). This statute clearly gives Fairfield discretion with regard to road improvements and does not directly address the town's maintenance duties. However, the fact that the town has the discretion to choose how to improve and change its streets does not necessarily give it the discretion to choose not to maintain them once they are open to the public. In short, this section of the code is inconclusive with respect to the question of whether Fairfield has a duty to maintain its streets.

¶ 18 Because the statutes cited by the parties neither create nor refute the existence of a clear legal duty on the part of Fairfield to maintain the Road, we consider whether the common law creates such a duty.

### B. The Common-Law Does Not Establish That Fairfield Has a Clear Legal Duty to Maintain Its Roads

¶ 19 The Farmers argue that Fairfield has a clear common law duty to maintain the Road. They first argue that this duty arises from tort principles. It is true that a vast number of Utah cases have found that municipalities have a duty under tort law to maintain their streets. *See, e.g., Braithwaite v. West Valley City Corp.,* 860 P.2d 336, 338 (Utah 1993) ("[A] municipality has a duty to exercise ordinary care to keep streets which it has opened for travel and which it has invited the public to use in a reasonably safe condition for travel."); *Bowen v. Riverton City,* 656 P.2d 434, 437 (Utah 1982) ("The city has a nondelegable duty to exercise due care in maintaining streets within its corporate boundaries in a reasonably safe condition for travel."). However, the Farmers do not point to any authority holding that a duty in tort gives rise to a sufficiently clear legal duty to form the basis for extraordinary relief. Though tort law imposes a duty on municipalities to maintain reasonably safe roads, it does not thereby create a right to performance absent tort injury and damages, neither of which are alleged in this case.

¶ 20 The Farmers also rely on case law from other jurisdictions in which courts have granted extraordinary relief based on a municipality's duty to maintain its roads. But these cases are entirely inapposite because, in each one, a statute dictated the town's clear legal duty to maintain the road at issue. For instance, in *Willoughby v. Whetstone Township Bd.,* 1998 SD 68, 581 N.W.2d 165, the court issued extraordinary relief mandating that a town repair a country road within its boundaries. However, the town's legal duty to maintain roads was clearly spelled out in a statute, which provided that " '[i]t *shall* be the duty of the board of township supervisors to arrange for the construction, repair, and maintenance of *all* secondary roads within the township.' " *Id.* ¶ 8 (quoting S.D. Codified Laws § 31–13–1). Similarly, cases cited from Pennsylvania and Ohio issued mandamus based on a town's statutory duty to maintain its roads. *See Lank v. Hughes,* 402 Pa. 284, 167 A.2d 268, 269–70 (1961); *Ross v. Fox,* 2003–Ohio–3513, ¶ 7.

¶ 21 It is possible that Fairfield has a legal duty outside tort law to ensure that roads within its jurisdiction are free from obstructions that make them impassable. In *Whitesides v. Green,* 13 Utah 341, 44 P. 1032 (1896), the court stated in dicta that municipalities must "keep ... road[s] open and in suitable repair, and, if obstructions be placed thereon, it is their duty to remove the same, and care for the rights of the public." 44 P. at 1033. Moreover, "[w]here there is *entire neglect* to work the roads, *and* the same are *out of repair,*" mandamus may be an appropriate remedy. *Klein v. People,* 31 Ill.App. 302, 305 (1889) (emphases added). More recently, an Illinois appellate court found a common-law duty to remove obstructions from a municipal roadway. *See Jamison v. City of Zion,* 359 Ill.App.3d 268, 295 Ill.Dec. 918, 834 N.E.2d 499 (2005). In *Jamison,* a citizen sued for a writ of mandamus to compel a municipality to remove a lilac bush that obstructed his view of and access to the road. The trial court dismissed the citizen's complaint, but the court of appeals reversed, finding that the common law of Illinois imposes a duty on municipalities to remove obstructions from the road.

¶ 22 At some point, the Road at issue in this case may become impassable to the extent necessary to invoke a common-law duty to remove obstructions. However, the district court's findings make clear that the

Road has not yet reached that level of disrepair. The Farmers complain of disrepair, but everything in the record indicates that they still have access to their property via the Road. Even if Fairfield has not repaired the section of the Road that leads out of town since the town's incorporation in 2004, until the Road becomes impassable, Fairfield has no clear legal duty to maintain it.[1]

¶ 23 In the absence of a clear legal duty, a court cannot mandate that a town perform maintenance on roads within its jurisdiction. The district court therefore properly ruled that it did not have the authority to mandate that Fairfield maintain the Road. Because Fairfield has no clear legal duty to maintain its roads, the Farmers have no clear right to performance of the Road maintenance. Therefore, the Farmers are not entitled to extraordinary relief, and the district court did not abuse its discretion in refusing to grant it.

III. WE NEED NOT ADDRESS WHETHER FAIRFIELD HAS THE DISCRETION TO REJECT FUNDS THE FARMERS OFFERED TO PAY FOR ROAD REPAIR

¶ 24 In further support of their request for extraordinary relief, the Farmers point out that they have volunteered to pay for certain repairs to the road. Because we find that Fairfield has no clear legal duty to maintain its roads, we need not address whether the court can compel the town to accept funds in order to complete repairs.

## CONCLUSION

¶ 25 Although the Farmers have standing to seek extraordinary relief, Fairfield does not have a clear legal duty to maintain its roads so long as the roads are passable. Thus, the Farmers are not entitled to extraordinary relief. We affirm the decision of the district court.

1. At oral argument, counsel for Fairfield asserted that repairs have been made since the hearing

¶ 26 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice NEHRING concur with Justice PARRISH'S opinion.

before the district court.