2014 UT App 53

**STATE of Utah, Plaintiff and Appellee,**

v.

**Troy Mathew FLOYD, Defendant and Appellant.**

**No. 20121092–CA.**

Court of Appeals of Utah.

March 6, 2014.

Colleen K. Coebergh, for Appellant.

Sean D. Reyes and Deborah L. Bulkeley, for Appellee.

Judge STEPHEN L. ROTH authored this Memorandum Decision, in which Judges J. FREDERIC VOROS JR. and JOHN A. PEARCE concurred.

Memorandum Decision

ROTH, Judge:

¶ 1 Defendant Troy Mathew Floyd appeals from convictions for possession of drugs and drug paraphernalia. He argues that the warrant police obtained to search his home "was issued on a probable cause affidavit so deficient on its face that no officer could rely

on it." Because Floyd did not preserve this issue for appeal, we affirm.

¶ 2 In 2011, Floyd stored his belongings in a home that was also rented by several other individuals. He kept a padlock on the door to his room. On January 18, 2011, investigators from Adult Probation and Parole, officers from the Uintah County Sheriff's Office, and a K–9 unit from the Naples City Police Department visited the home to arrest one of its other occupants (the parolee) for a parole violation. After police located and arrested the parolee, they searched him and found a bag of methamphetamine. Police then deployed a drug detection dog to search his room for drugs. The dog found a pipe in the room, and police then had the dog search the common areas of the home. While searching the hallway outside the parolee's room, the dog stopped in front of Floyd's nearby room and alerted, leading its handler to believe that there were drugs inside. The parolee's girlfriend, who was on probation at the time, was at the home when the police arrived. She told them that there were drugs in Floyd's room and that she was "not going to take the fall for that." Based on the dog's behavior, the girlfriend's statement, and an anonymous source of information that "Floyd has been involved with the distribution of narcotics," police obtained a warrant. They found drugs in Floyd's room and arrested him.

¶ 3 Floyd filed a motion to suppress the drug evidence. He argued that police obtained the information supporting the warrant through an illegal search of the home. In particular, he asserted that police impermissibly continued to search the home with the drug-detection dog after they had already arrested the parolee and taken the pipe from the parolee's room. During a hearing on the motion, the judge asked Floyd's counsel if he was attacking the validity of the warrant on any other basis: "You don't find anything about the issuance of the warrant illegal except for the basis of the use of the dog." Floyd's counsel responded, "That is correct, your Honor."

¶ 4 The district court denied the motion to suppress, noting that police had authorization to search "the common areas of the home" for drugs "to determine whether or not there [were] other drugs in the home that would have been available to the parolee." The court also found that even though "[t]he warrant wasn't challenged," it "was appropriately issued, and ... all due precaution to the Constitutional Rights of the individuals was taken by law enforcement by stopping and obtaining a warrant prior to a further search." A jury subsequently convicted Floyd on all counts.

¶ 5 On appeal, Floyd does not argue that police wrongly exceeded the scope of their initial search, as he did in the district court. Instead, he asserts that because the affidavit supporting the warrant had no "indicia of reliability," the magistrate had no "substantial basis" to issue the warrant and no reasonable police officer could have relied on it. Specifically, Floyd contends that the affidavit did not sufficiently detail the drug-detection dog's training and deployment history, establish the reliability of the anonymous informant, or justify reliance on the parolee's girlfriend, who Floyd claims "had incentive to blame [the] presence of narcotics [in Floyd's room] on someone other than herself." We do not address these issues, however, because Floyd did not preserve them for appeal.

¶ 6 "To preserve an issue for appeal, the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on the issue." *Pratt v. Nelson*, 2007 UT 41, ¶ 15, 164 P.3d 366 (citation and internal quotation marks omitted). General mention of the issue is not enough; parties must specifically identify the issue in a timely manner and provide "supporting evidence or relevant legal authority." *Id.* (citation and internal quotation marks omitted). Appellate courts generally will not consider an issue raised for the first time on appeal absent plain error, exceptional circumstances, or ineffective assistance of counsel. *State v. Kozlov*, 2012 UT App 114, ¶ 35, 276 P.3d 1207.

¶ 7 "When a party raises an issue on appeal without having properly preserved the issue below," the party must "articulate an appropriate justification for appellate re-

view." *State v. Winfield,* 2006 UT 4, ¶ 14, 128 P.3d 1171 (citation and internal quotation marks omitted). Otherwise, the issue is waived. *See State v. Pinder,* 2005 UT 15, ¶ 47, 114 P.3d 551 (declining to review the admissibility of a witness's testimony in a criminal proceeding because the defendant did not "argue on appeal that allowing [the witness] to take the stand constituted plain error . . . or that exceptional circumstances make appellate review appropriate"). And even where a defendant alleges plain error or exceptional circumstances, appellate review is still unavailable if "counsel, either by statement or act, affirmatively represented to the [trial] court that he or she had no objection to the [proceedings]." *Winfield,* 2006 UT 4, ¶ 14, 128 P.3d 1171 (alterations in original) (citations and internal quotation marks omitted).

¶ 8 These rules are designed to promote judicial economy and fairness by allowing the trial court an opportunity to address any claimed errors before appeal. *State v. Holgate,* 2000 UT 74, ¶ 11, 10 P.3d 346. They also encourage the parties to subject each issue in a case to the rigors of adversarial testing, *State v. King,* 2006 UT 3, ¶ 14, 131 P.3d 202, and prevent defendants from intentionally foregoing objections in hopes of setting up a reversible issue on appeal, *Holgate,* 2000 UT 74, ¶ 11, 10 P.3d 346.

¶ 9 Here, although Floyd filed a motion to suppress, he argued only that the warrant was tainted by information police gathered with the drug-detection dog after they exceeded the scope of their initial lawful entry. He did not call into question any of the information in the affidavit supporting the warrant that he now challenges on appeal—not the credibility of the parolee's girlfriend, the training and experience of the drugdetection dog, or the reliability of a police informant. Rather, he affirmatively represented to the district court that his challenge to the warrant was limited to "the use of the dog." As a result, Floyd did not preserve any argument that there was insufficient evidence to support issuance of the warrant.

¶ 10 Because Floyd's argument is unpreserved, appellate review is available only if he establishes an exception to the preservation rule. *See supra* ¶¶ 6–7. But on appeal, Floyd does not argue that his counsel was ineffective, nor does he assert that plain error or exceptional circumstances permit appellate review. And even if he had, review for plain error or exceptional circumstances would not be appropriate because Floyd invited any error.[1] Defense counsel's affirmative representation that there were no problems with the warrant beyond the investigators' use of a drug-detection dog "fall[s] squarely within the scope of [the] . . . invited error doctrine," and we therefore must decline to review the district court's decision. *See Winfield,* 2006 UT 4, ¶ 18, 128 P.3d 1171. Accordingly, we affirm Floyd's convictions.

---

1. "Invited error does not . . . preclude our review of a claim of ineffective assistance of counsel." *State v. Sellers,* 2011 UT App 38, ¶ 13, 248 P.3d 70.