**2016 UT App 156**

### THE UTAH COURT OF APPEALS

REGINALD WILLIAMS,
Appellant,
*v.*
DEPARTMENT OF CORRECTIONS, MATTHEW B. ANDERSON, DAVID J.
ANGERHOFFER, ALFRED C. BIGELOW, LARRY BUSSIO, WAYNE A.
FREESTONE, PAUL GARDNER, AND STEVEN TURLEY,
Appellees.

Opinion
No. 20140623-CA
Filed July 21, 2016

Third District Court, Salt Lake Department
The Honorable L.A. Dever
No. 110918680

Reginald Williams, Appellant Pro Se

Sean D. Reyes and Brent A. Burnett, Attorneys
for Appellees

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGE MICHELE M. CHRISTIANSEN and SENIOR JUDGE RUSSELL W.
BENCH concurred.[1]

VOROS, Judge:

¶1      Reginald Williams appeals the district court's order
dismissing his petition for extraordinary relief under rule 65B of
the Utah Rules of Civil Procedure.[2] We affirm.

---

1. Senior Judge Russell W. Bench sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

2. Williams appears pro se. "[A] party who represents himself
will be held to the same standard of knowledge and practice as
(continued…)

BACKGROUND

¶2 Williams filed a "Petition for Extraordinary Relief, Independent Action, Petition for Review of Records Denial." *See Williams v. Department of Corrections*, 2013 UT App 159, ¶ 3, 306 P.3d 821. He also filed a motion to disqualify the Utah Attorney General's Office. *Id.* The district court dismissed his petition without ruling on the motion to disqualify. *Id.* Williams appealed, and we reversed the dismissal and remanded the case to the district court for a ruling on the motion to disqualify. *Id.* ¶ 12. We also addressed Williams's contention that the district court "erred in treating the entire petition as one brought under rule 65B." *Id.* ¶ 10. We held that the district court "had discretion to dismiss from a petition for extraordinary relief any claims seeking ordinary relief." *Id.* After we issued our decision, Williams moved for, and this court granted, an award of costs pursuant to rule 34 of the Utah Rules of Appellate Procedure.

¶3 On remand, the district court considered and denied Williams's motion to disqualify the Attorney General's Office. Williams filed an amended petition under rule 65B, but the court struck the amended petition on the ground that it "contain[ed] claims that [were] not in compliance with the standards of Rule 65B, i.e., it contain[ed] ordinary claims." The court gave Williams 20 days to amend his petition "in strict compliance with Rule 65B." Williams filed a second amended petition, asserting ten causes of action under rule 65B(d)(2). The district court dismissed Williams's second amended petition. It also ruled that

----

(…continued)

any qualified member of the bar. Nevertheless, because of his lack of technical knowledge of law and procedure, [a pro se litigant] should be accorded every consideration that may reasonably be indulged." *State v. Winfield*, 2006 UT 4, ¶ 19, 128 P.3d 1171 (citations and internal quotation marks omitted).

Williams failed to timely file, itemize, and verify his bill of costs. Williams appeals from both decisions.

ANALYSIS

¶4    Rule 65B of the Utah Rules of Civil Procedure allows a person to petition for extraordinary relief when "no other plain, speedy and adequate remedy is available." Utah R. Civ. P. 65B(a). Williams filed his second amended petition under rule 65B(d)(2), subsections (B) and (C). Subsection (B) provides for relief "where an inferior court, administrative agency, corporation or person has failed to perform an act required by law as a duty of office, trust or station"; subsection (C) provides for relief "where an inferior court, administrative agency, corporation or person has refused the petitioner the use or enjoyment of a right or office to which the petitioner is entitled." *Id.* R. 65B(d)(2)(B), (C).[3]

¶5    "[R]ule 65B(d) is the equivalent of a common law petition for a writ of mandamus and provides the equivalent remedy." *Hogs R Us v. Town of Fairfield*, 2009 UT 21, ¶ 11, 207 P.3d 1221. "The common law writ of mandamus was designed to compel a person to perform a legal duty incumbent upon him by virtue of his office or as required by law." *Renn v. Board of Pardons & Parole*, 904 P.2d 677, 682 (Utah 1995). "In order to obtain extraordinary relief under rule 65B(d), a petitioner must establish two things: (1) 'a clear legal right to the performance of the act demanded,' and (2) 'a plain duty of the officer, board, or other tribunal to perform as demanded.'" *Hogs R Us*, 2009 UT 21, ¶ 12 (quoting *Garcia v. Jones*, 510 P.2d 1099, 1100 (Utah 1973)). "Though a plaintiff may request the district court to direct the

---

3. Although Williams asserted that he brought his claims under rule 65B(d)(2)(B) and (C), he did not specify which claims fell under which subsections.

exercise of discretionary action, the writ is not available to direct the exercise of judgment or discretion in a particular way." *Id.* ¶ 11 (citation, internal quotation marks, and emphasis omitted). "While the decision to grant or deny extraordinary relief is within the district court's discretion, we review the legal reasoning of the court for correctness." *Id.* ¶ 6 (citation and internal quotation marks omitted).

## I. Contract Attorney Claims

¶6      Williams first contends that the district court abused its discretion when it dismissed his claims that the Utah Department of Corrections failed to provide him with constitutionally mandated legal assistance. Williams asserts that the attorneys contracted by the Department to assist inmates in legal matters (the contract attorneys) "refused to prepare the initial pleadings," "failed to conduct any research regarding [Williams's] claims, and refused to provide him requested case law." He further contends that the district court abused its discretion when it dismissed his claims that the Department failed to perform acts required by law. He argues that the Department should have required the contract attorneys to assist him in preparing his claims.

¶7      Williams relies on *Bounds v. Smith*, 430 U.S. 817 (1977). In *Bounds*, the United States Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828. "The right that *Bounds* acknowledged was the (already well-established) right of access to the courts," *Lewis v. Casey*, 518 U.S. 343, 350 (1996), not "an abstract, freestanding right to a law library or legal assistance," *id.* at 351. Accordingly, "the tools [*Bounds*] requires to be provided are those that the inmates need in order to attack their

sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355. In other words, "[o]ther than habeas corpus or civil rights actions regarding current confinement, a state has no affirmative constitutional obligation to assist inmates in general civil matters." *Carper v. DeLand*, 54 F.3d 613, 616–17 (10th Cir. 1995). Furthermore, "an inmate's right of access does not require the state to supply legal assistance beyond the preparation of initial pleadings in a civil rights action regarding current confinement or a petition for a writ of habeas corpus." *Id.* at 617; *see also Bounds*, 430 U.S. at 828 n.17.

¶8    The Department contracts with outside counsel to provide legal assistance to prison inmates. *See* Utah Admin. Code R251-707-3(4). These contract attorneys "assist inmates in preparing and filing . . . an initial pleading in habeas corpus and civil right suits challenging conditions of confinement arising from incarceration at the prison." *Id.* R251-707-3(1). They are required to "screen inmate claims for meritorious legal content"; "[c]onduct the amount of legal research reasonably necessary to support inmate claims having legal merit," which may include copying "cases and/or court rules for pleadings that the contract attorneys are helping draft"; "[a]ssist inmates in drafting pleadings setting forth inmate legal claims having legal merit"; and "[a]ssist inmates in securing case law and other authority relevant to pending legal actions being handled by the contract attorneys." (Emphasis omitted.) To facilitate the review of inmates' legal claims, the contract attorneys use forms to gather necessary information.

¶9    Williams argues that the contract attorneys should have prepared petitions for him "to vindicate condition of confinement civil rights claims, including religious freedom violations and equal protection violations which he wanted to

file under 42 U.S.C. § 1983 and a rule 65B action to compel [the Department] to comply with its own rules." The record shows that, although Williams requested and received information forms for causes of action under both section 1983 and rule 65B from the contract attorneys, he returned blank forms to the contract attorneys. While Williams's claims may have had legal merit, he was required to provide the necessary information to the contract attorneys to receive their assistance. Without Williams's explanation of the facts underlying his proposed petition, the contract attorneys were not required to provide assistance in preparing initial pleadings, conducting legal research, or providing copies of requested case law and other authorities.[4]

¶10    Williams next argues that the contract attorneys were required to assist him in preparing an appeal under the Utah Government Records Access and Management Act (GRAMA), *see* Utah Code Ann. § 63G-2-404(2)(a) (LexisNexis Supp. 2015), and a notice of claim against a government entity, *see id.* § 63G-7-401(2) (2014). But these requests were not made "in order to attack [Williams's] sentences" or "to challenge the conditions of [his] confinement." *See Lewis*, 518 U.S. at 355. As previously stated, "[o]ther than habeas corpus or civil rights actions regarding current confinement, a state has no affirmative constitutional obligation to assist inmates in general civil matters." *Carper*, 54 F.3d at 616–17.

---

4. Williams also argues that the district court erred when it dismissed his claim that the contract attorneys refused to provide him photocopies of legal materials at no charge. The district court dismissed this claim for "fail[ing] to satisfy the required pleading standard." Because we determine that Williams was not entitled to the contract attorneys' assistance, it follows that he was not entitled to free photocopies of legal materials, as explained above.

¶11    Williams also contends that the district court abused its discretion when it dismissed his claim that the Department "failed to provide him alternative legal assistance to prepare an initial pleading regarding the [contract attorneys'] refusal to provide legal assistance." He argues that the Department "has no regulations to ensure [he] receives legal assistance for claims against the [contract attorneys]."

¶12    The record shows that the Department does provide for alternative legal counsel "to any inmate with whom a bona fide conflict of interest exists." The contract defines a bona fide conflict as one in which "(1) relevant papers from a court of competent jurisdiction have been served or a formal complaint has been filed with the Utah State Bar, and (2) the court or bar has made preliminary determination that such action has merit." The record further shows that Williams availed himself of the process by requesting alternative legal counsel and filing a complaint with the Utah State Bar's Office of Professional Conduct (OPC) against the contract attorneys.

¶13    However, the record does not show whether the OPC made a preliminary determination that Williams's claim had merit. And Williams does not argue that the OPC failed to act. Furthermore, Williams's complaints against the contract attorneys are essentially that they did not assist him as required by law. Because these claims lack merit, it follows that Williams does not have a bona fide conflict that would require conflict counsel. Accordingly, the district court did not abuse its discretion in dismissing Williams's claim that the Department "fail[ed] to develop and implement policies to provide alternative legal assistance."

¶14    Finally, Williams contends that the district court erred by not "accepting the facts of the petition as true" in dismissing his claims regarding the contract attorneys. Williams's contention implicates rule 12 of the Utah Rules of Civil Procedure. "A

proceeding under rule 65B is an extraordinary proceeding with idiosyncratic procedural rules." *Williams v. Department of Corrections*, 2013 UT App 159, ¶ 10, 306 P.3d 821. But "[t]o the extent that [rule 65B] does not provide special procedures, proceedings on petitions for extraordinary relief shall be governed by the procedures set forth" in the Utah Rules of Civil Procedure. Utah R. Civ. P. 65B(a). Rule 65B(d) does not provide special procedures for dismissal, so we look to rule 12 for guidance. *See id.* R. 65B(d); *see also Alvarez v. Galetka*, 933 P.2d 987, 988 (Utah 1997) (stating that rule 12(b)(6) applies to rule 65B(a) petitions); *Lancaster v. Board of Pardons*, 869 P.2d 945, 948 (Utah 1994) (stating that "a petition of any nature which fails to state a claim may be dismissed").

¶15 Williams's contract-attorney claims allege that he "requested [that the contract attorneys] prepare an initial pleading on two occasions" and that the contract attorneys "refused to prepare the pleadings." The record shows that Williams requested and received forms for causes of action under both section 1983 and rule 65B from the contract attorneys, but returned them blank.

¶16 "Generally, it is reversible error for a trial court to consider and rely on matters outside the pleadings without converting [a] rule 12(b)(6) motion to a motion for summary judgment." *BMBT, LLC v. Miller*, 2014 UT App 64, ¶ 6, 322 P.3d 1172 (citing *Oakwood Village LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 12, 104 P.3d 1226). "However, our supreme court has held that it is not error for the trial court to consider documents that are 'referred to in the complaint and [are] central to the plaintiff's claim,' regardless of whether such documents were actually included with the complaint." *Id.* (quoting *Oakwood Village*, 2004 UT 101, ¶ 13). "[I]f the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff

relied." *Oakwood Village*, 2004 UT 101, ¶ 13 (citation and internal quotation marks omitted).

¶17    Here, Williams's contract-attorney claims rely on the documentation of his requests to the contract attorneys. Although his petition does not attach these documents as exhibits, it references exhibits attached to his previous pleadings. Those exhibits included the contract attorneys' "file checklist," which indicates that Williams met with the attorneys, that the attorneys were prepared to research Williams's meritorious claims, but that Williams "returned [a] blank [section] 1983 packet." Without Williams's explanation of the facts underlying his proposed petition, the contract attorneys were not required to provide assistance in drafting pleadings. The district court properly viewed the facts alleged in Williams's petition in light of these exhibits.

## II. Inmate Trust Fund Account Claims

¶18    Williams next contends that the district court abused its discretion when it dismissed his claims against the Department for failing to put the Inmate Trust Fund Account (ITFA) out for bid. The district court found that Williams had "not demonstrated that his ITFA claims [were] appropriate as a claim for extraordinary relief."

¶19    "An inmate need not challenge conditions of confinement in order to bring a Rule 65B petition." *Barney v. Department of Corrections*, 1999 UT App 171U, para. 1 (per curiam) (citing *Renn v. Board of Pardons & Parole*, 904 P.2d 677, 682 (Utah 1995)). "In order to obtain extraordinary relief under rule 65B(d), a petitioner must establish two things: (1) a clear legal right to the performance of the act demanded, and (2) a plain duty of the officer, board, or other tribunal to perform as demanded." *Hogs R Us v. Town of Fairfield*, 2009 UT 21, ¶ 12, 207 P.3d 1221 (citation and internal quotation marks omitted). "A duty underlying Rule

65B extraordinary relief can be created by statute or found in the common law." *Id.* ¶ 13.

¶20 Although Williams points to provisions in the Department's internal procedures manual, no statute imposes a duty on the Department to place ITFA out for bid. And Williams does not argue that the Department had a duty under common law or "point to any authority holding that a duty in tort gives rise to a sufficiently clear legal duty to form the basis for extraordinary relief." *See id.* ¶ 19. Accordingly, he has not shown that the district court abused its discretion by dismissing his ITFA claims.

### III. Motion to Disqualify the Attorney General's Office

¶21 Williams further contends that the district court erred when it denied his motion to disqualify the Utah Attorney General's office (the AG) for breach of confidentiality.[5]

---

5. Williams also contends that the court abused its discretion for not "granting [Williams] extraordinary relief against the [Department] for abusing its discretion to confiscate the petitioner's privileged legal documents" and for falsifying reports regarding the confiscation of his legal materials. The district court struck these claims from Williams's rule 65B petition as "an attempt of Petitioner to re-argue his . . . Motion to Disqualify Counsel," which the court had previously denied. "[E]xtraordinary writs are available only when there is no 'plain, speedy and adequate remedy' at law." *Renn v. Board of Pardons & Parole*, 904 P.2d 677, 682 (Utah 1995) (quoting Utah R. Civ. P. 65B(a)). Williams availed himself of the "plain, speedy and adequate remedy" of moving to disqualify counsel. The district court considered Williams's motion and denied it. That denial is now before us on appeal. Williams therefore could not bring the same issue before the court in a rule 65B(d) petition.

¶22 "Trial courts are generally allowed considerable discretion in granting or denying motions to disqualify counsel, and such decisions will only be overturned when that discretion is exceeded." *State v. Balfour*, 2008 UT App 410, ¶ 11, 198 P.3d 471. "In deciding a motion to disqualify for breach of confidentiality, courts have considered: (1) whether the disclosing party had confidential or privileged information pertaining to [the movant's] trial preparation and strategy; (2) whether the disclosing party disclosed the information to opposing counsel; and (3) whether, in light of such disclosure, opposing counsel's continued representation . . . threaten[s] to taint all further proceedings in this case." *Cade v. Zions First Nat'l Bank*, 956 P.2d 1073, 1081 (Utah Ct. App. 1998) (alterations and omissions in original) (citations and internal quotation marks omitted).

¶23 Williams claims that the Department confiscated his legal materials and allowed the AG to search, read, and remove documents. The record does show that the Department and the AG took these actions. However, the record also places these actions in context. The AG discovered that it "had inadvertently disclosed certain confidential GRAMA protected documents to [Williams] in response to [his] GRAMA requests." The AG contacted the Department to retrieve the protected documents. Williams's legal materials were taken by the Department and reviewed by the contract attorneys according to the Department's policy. The contract attorneys determined that none of Williams's legal materials were privileged, and only then was the AG permitted to look for and retrieve the protected documents. The AG then provided redacted copies to Williams.

¶24 The district court considered the AG's actions in light of this "relevant history." It found that the contract attorneys had not disclosed "confidential or privileged information pertaining to [Williams's] trial preparation and strategy." *See id.* (citations and internal quotation marks omitted). Williams has not shown

otherwise by pointing to any specific confidential documents that were confiscated and reviewed. Nor does he acknowledge the factual context of his claim. Accordingly, he has not shown that the district court abused its discretion in denying his motion to disqualify the AG.

## IV. Costs on Appeal

¶25 Finally, Williams contends that the district court erred by denying his motion for costs. This court awarded costs to Williams pursuant to rule 34 of the Utah Rules of Appellate Procedure. In granting the award, we ordered Williams to "serve upon the State and file with the clerk of the trial court an itemized and verified bill of costs incurred on appeal, within 15 days after remittitur." Notice of remittitur was filed with the district court on September 16, 2013. On the day his bill of costs was due, Williams requested a ten-day extension. The court did not respond to Williams's request, but Williams nevertheless filed his bill of costs one month after remittitur,[6] attaching his inmate account statements as exhibits. The Department objected, arguing that Williams had failed to comply with this court's mandate to submit "an itemized and verified bill of costs." In response, Williams submitted an "amendment" to his bill of costs with a calculation of the total. The district court sustained the Department's objection to Williams's bill of costs. The court ruled that Williams had failed to itemize and verify his costs incurred on appeal and that the filing was untimely.

¶26 Williams argues that, as a pro se litigant, he "should be accorded every consideration that may reasonably be indulged." (Citing *State v. Winfield*, 2006 UT 4, ¶ 19, 128 P.3d 1171.) "Our approach to pro se litigants seeks to balance the procedural

---

6. Williams filed his bill of costs one month after remittitur, but it was dated September 18, 2013—only two days after remittitur.

demands of litigation and the rights of unrepresented parties." *Id.* So while a pro se litigant "should be accorded every consideration that may reasonably be indulged," "[a]s a general rule, a party who represents himself will be held to the same standard of knowledge and practice as any qualified member of the bar." *Id.* (citations and internal quotation marks omitted).

¶27 Williams argues that the district court should not have required "a meticulous and detailed report regarding the costs he incurred on appeal." But the court merely noted that it could not identify from the inmate account statements which costs Williams incurred on appeal. It did not require "a meticulous and detailed report," but rather an itemized and verified account pursuant to rule 34 of the Utah Rules of Appellate Procedure, which Williams did not provide. *Cf. Da Rouch v. District Court of Third Judicial Dist.*, 79 P.2d 1006, 1007 (Utah 1938) (stating that "the district court had no jurisdiction except to enforce" the supreme court's order awarding costs and that "the only way [the petitioner's] right to costs could be defeated would be by some act or omission on her part which would prevent her from recovering her costs awarded by [the supreme] court").

¶28 Williams also argues that the district court abused its discretion when it ruled that his bill of costs was untimely. "When an act may or must be done within a specified time," the district court has discretion to extend the time "for good cause." Utah R. Civ. P. 6(b). We therefore review a court's grant or refusal to extend the time to act in a case for an abuse of discretion. *See Stoddard v. Smith*, 2001 UT 47, ¶ 22, 27 P.3d 546. Williams argues that the court did not address his allegation that his filing was untimely due to the Department's delay in providing him with photocopies. The court did not in fact address these allegations, but it did note that Williams had managed to timely file documents with the court over the course of this litigation. Because we have determined that the court properly denied the bill of costs due to Williams's failure to

itemize and verify his costs, we need not determine whether the district court abused its discretion in ruling that the bill of costs was also untimely filed.

## CONCLUSION

¶29 For the foregoing reasons, the judgment of the district court is affirmed.

———————