2011 UT App 234

STATE of Utah, Plaintiff and Appellee,

v.

Jerry COOPER, Defendant and Appellant.

No. 20080413–CA.

Court of Appeals of Utah.

July 21, 2011.

Aaron P. Dodd, Provo, for Appellant.

Mark L. Shurtleff and Marian Decker, Salt Lake City, for Appellee.

Before Judges ORME, ROTH, and CHRISTIANSEN.

## OPINION

CHRISTIANSEN, Judge:

¶ 1 Defendant Jerry Cooper appeals his jury convictions for four counts of filing a wrongful lien. *See* Utah Code Ann. § 38–9–5(2) (2001) (current version at Utah Code Ann. § 76–6–503 (2008)).[1] We affirm.

---

1. Because the legislature amended the wrongful lien statute after Defendant's criminal actions, *see* Utah Code Ann. § 76–6–503.5 history (2008) (stating that the new version became effective in May 2005), we analyze his actions under the

## BACKGROUND [2]

¶ 2 In 1997, Mary and Richard Pace purchased a sixty-three percent property interest in a certain parcel of property at a tax sale. Due to complications that arose in asserting their rights to the property, the Paces hired attorney Rodney Rivers, who conducted a title search that revealed several people with a potential interest in the property. Rivers then filed a quiet title action against Defendant and other potential owners. Judge Lynn Davis of the Fourth District Court ultimately decided the quiet title action in the Paces' favor in January 2004.

¶ 3 On November 15, 2004, Defendant's father, Richard Donald Cooper, recorded a document titled "Administrative Judgment" with the Utah County Recorder's Office at Defendant's request.[3] Defendant initialed the Administrative Judgment verifying that he had prepared and submitted it, which stated, in part, that the Paces, Rivers, and Judge Davis were each jointly and severally liable to Defendant in the amount of $4.2 million. On July 21, 2005, Judge Anthony Quinn entered a civil judgment declaring the Administrative Judgment a wrongful lien as it related to Judge Davis's property.

¶ 4 In July 2005, the State charged Defendant with four counts of filing a wrongful lien.[4] Following a trial in January 2008, during which Defendant represented himself, a jury convicted Defendant on all four counts. Defendant now appeals those convictions.

## ISSUES AND STANDARDS OF REVIEW

 ¶ 5 Defendant asserts that he was denied his state and federal constitutional rights to a jury trial when the trial court instructed the jury that the Administrative Judgment had been determined by another court to be a wrongful lien against Judge Davis. "The standard of review for jury instructions to which counsel has objected is correctness." *State v. Bryant*, 965 P.2d 539, 544 (Utah Ct.App.1998).

However, rule 19(e) of the Utah Rules of Criminal Procedure provides, in pertinent part: "Unless a party objects to an instruction or the failure to give an instruction, the instruction may not be assigned as error except to avoid a manifest injustice." Utah R.Crim. P. 19(e).... Therefore, pursuant to rule 19(e), [a d]efendant's failure to object to [a] ... jury instruction at trial renders the instruction reviewable for plain error, or manifest injustice, rather than for correctness.

*State v. Halls*, 2006 UT App 142, ¶ 10, 134 P.3d 1160 (additional internal quotation marks omitted), *aff'd sub nom. State v. Austin*, 2007 UT 55, ¶ 8, 165 P.3d 1191; *see also State v. Casey*, 2003 UT 55, ¶ 40, 82 P.3d 1106 ("[I]n most circumstances the term manifest injustice is synonymous with the plain error standard ...." (internal quotation marks omitted)). But if the defendant invited the error, we will not review the error for manifest injustice. *See State v. Winfield*, 2006 UT 4, ¶ 14, 128 P.3d 1171.

¶ 6 Defendant also argues that the trial court plainly erred when it submitted the charges to the jury because "there was insufficient evidence to establish that [Defendant] filed a wrongful lien as it relates to Judge Davis, and there was insufficient evidence that [Defendant] committed four separate acts of filing a wrongful lien." "To demonstrate that the evidence is insufficient, Defendant must first 'marshal the evidence in support of the verdict.'" *State v. Hodge*, 2008 UT App 409, ¶ 17, 196 P.3d 124 (citation omitted).

---

previous version of the statute, *see* Utah Code Ann. §§ 38–9–1(6), –5 (2001).

**2.** " 'On appeal from a jury verdict, we view the evidence and all reasonable inferences in a light most favorable to that verdict and recite the facts accordingly.' " *State v. Allen*, 2005 UT 11, ¶ 2, 108 P.3d 730 (citation omitted), *cert. denied*, 546 U.S. 832, 126 S.Ct. 60, 163 L.Ed.2d 85 (2005).

**3.** Richard Donald Cooper was later charged and convicted of four counts of filing a wrongful lien under the new version of the statute, *see* Utah Code Ann. § 76–6–503.5 (2008), when he filed an additional document that referenced the Administrative Judgment.

**4.** The State also charged Defendant with four counts of communications fraud, but those charges were later dismissed.

[W]e [then] review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury. We will reverse a jury conviction for insufficient evidence only when the evidence is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted.

*State v. Shumway,* 2002 UT 124, ¶ 15, 63 P.3d 94.

## ANALYSIS

### I. Jury Instruction

■ ¶ 7 Jury instruction number 34 stated, "The document entitled 'Administrative Judgment' recorded on November 15, 2004 in the office of the Utah County Recorder against Lynn W. Davis is a wrongful lien under Title 38 Chapter of the Utah Code." Defendant argues on appeal that the jury instruction violated his constitutional rights to have a jury determine the facts supporting the elements of his crime. However, Defendant did not argue this issue to the trial court. In fact, when the trial court specifically asked whether Defendant had any objections to the jury instructions numbered 28 to 34, Defendant responded, "No, your Honor." The State argues that Defendant invited any error by his affirmative representation. We agree.

■ ¶ 8 "Generally speaking, a timely and specific objection must be made [at trial] in order to preserve an issue for appeal." *Winfield,* 2006 UT 4, ¶ 14, 128 P.3d 1171 (alteration in original) (internal quotation marks omitted).

As a general rule, claims not raised before the trial court may not be raised on appeal. The preservation rule serves two important policies. First, in the interest of orderly procedure, the trial court ought to be given an opportunity to address a claimed error and, if appropriate, correct it. Second, a defendant should not be permitted to forego making an objection with the strategy of enhanc[ing] the defendant's chances of acquittal and then, if that strategy fails, ... claim[ing] on appeal that the [appellate c]ourt should reverse. To serve these policies, [the Utah Supreme Court] ha[s] held that *the preservation rule applies to every claim, including constitutional questions,* unless a defendant can demonstrate that exceptional circumstances exist or plain error occurred.

*State v. Holgate,* 2000 UT 74, ¶ 11, 10 P.3d 346 (omission and first and second alterations in original) (emphasis added) (citations and internal quotation marks omitted). Similarly, rule 19(e) of the Utah Rules of Criminal Procedure states, "Unless a party objects to an instruction or the failure to give an instruction, the instruction may not be assigned as error except to avoid a manifest injustice." Utah R.Crim. P. 19(e). "[I]n most circumstances the term manifest injustice is synonymous with the plain error standard...." *Casey,* 2003 UT 55, ¶ 40, 82 P.3d 1106 (internal quotation marks omitted); *see also State v. Rudolph,* 970 P.2d 1221, 1226 (Utah 1998) ("When reviewing a claim for manifest injustice, we generally use the same standard that is applied to determine whether plain error exists.... That standard is two-pronged. First, the error must be obvious. Second, the error must be of sufficient magnitude that it affects the substantial rights of a party." (citations and internal quotation marks omitted)).

¶ 9 "But under the doctrine of invited error, [the Utah Supreme Court] ha[s] declined to engage in even plain error review when counsel, either by statement or act, affirmatively represented to the [trial] court that he or she had no objection to the [proceedings]." *Winfield,* 2006 UT 4, ¶ 14, 128 P.3d 1171 (third and fourth alterations in original) (internal quotation marks omitted).

While a party who fails to object to or give an instruction may have an instruction assigned as error under the manifest injustice exception, a party cannot take advantage of an error committed at trial when that party led the trial court into committing the error. Accordingly, a jury instruction may not be assigned as error even if such instruction constitutes manifest injustice if counsel, either by statement or act, affirmatively represented to

the court that he or she had no objection to the jury instruction.

*State v. Geukgeuzian,* 2004 UT 16, ¶ 9, 86 P.3d 742 (citations and internal quotation marks omitted); *see also State v. Maese,* 2010 UT App 106, ¶ 12, 236 P.3d 155 (determining that the defendant invited any error in the jury instructions when, in response to the court's question, defense counsel affirmatively approved the jury instructions, but then on appeal, attempted to argue the jury instructions contained an error), *cert. denied,* 247 P.3d 774 (Utah 2011).

¶ 10 "Affirmative representations that a party has no objection to the proceedings fall within the scope of the invited error doctrine because such representations reassure the trial court and encourage it to proceed without further consideration of the issues." *State v. Winfield,* 2006 UT 4, ¶ 16, 128 P.3d 1171. Examples of affirmative representations include "where counsel stipulates to the court's instruction, states directly that there is no objection to a specific ruling of the court, or provides the court with erroneous authority upon which the court relies." *Pratt v. Nelson,* 2007 UT 41, ¶ 23, 164 P.3d 366; *see also id.* ¶¶ 19–23 (discussing criminal cases involving invited error to determine that an untimely filed memorandum that was stricken did not invoke the invited error doctrine); *Geukgeuzian,* 2004 UT 16, ¶ 10, 86 P.3d 742 (The supreme court "ha[s] recognized a number of ways in which a defendant has led a trial court into committing error. In [*State v.*] *Hamilton,* [2003 UT 22, 70 P.3d 111,] for instance, a defendant invited error where his counsel confirmed on the record that the defense had no objection to the instruction given by the trial court. *Id.* ... ¶ 55. In [*State v.*] *Anderson,* [929 P.2d 1107 (Utah 1996),] a defendant likewise invited error when he failed to object to an instruction when specifically queried by the court. 929 P.2d at 1108–09. Finally, in *State v. Medina,* a defendant invited error when his counsel actively represented to the trial court that she had read the instruction and had no objection to it. 738 P.2d 1021, 1023 (Utah 1987).").

¶ 11 Because Defendant affirmatively represented that he did not object to jury instruction number 34, the invited error doctrine applies. *See Geukgeuzian,* 2004 UT 16, ¶ 9, 86 P.3d 742. Defendant contends that his pro se status should preclude the application of the invited error doctrine. There are several reasons, however, why the invited error doctrine applies to Defendant.

¶ 12 First, the general purpose of the invited error doctrine supports its application to a pro se defendant. "While the invited error doctrine is crafted to discourage[ ] parties from intentionally misleading the trial court so as to preserve a hidden ground for reversal on appeal, it is also intended to give the trial court the first opportunity to address the claim of error." *Id.* ¶ 12 (alteration in original) (internal quotation marks omitted); *see also id.* ¶¶ 8, 12 (rejecting the defendant's argument that invited error required the defendant to be "engaged in a conscious and affirmative act that led the trial court to commit the instructional error"). "Encouraging counsel to actively participate in all proceedings and to raise any possible error at the time of its occurrence fortifies our long-established policy that the trial court should have the first opportunity to address a claim of error." *Winfield,* 2006 UT 4, ¶ 15, 128 P.3d 1171 (internal quotation marks omitted).

¶ 13 Second, our general approach to pro se defendants supports the application of the invited error doctrine in such cases. A criminal defendant is clearly entitled to waive his constitutional right to legal counsel and to represent him or herself. *See State v. Pedockie,* 2006 UT 28, ¶¶ 26, 28, 137 P.3d 716 (determining that a criminal defendant can waive his right to counsel and represent himself at trial, and explaining that one way to assert that right is by waiver, which "typically occurs when a defendant affirmatively requests permission to proceed pro se"); *State v. Arguelles,* 2003 UT 1, ¶ 83, 63 P.3d 731 (" 'An individual's constitutional right to represent himself is one of great weight and considerable importance in our criminal justice system.' " (citation omitted)). "Before permitting a defendant to do so, however, a trial court should ensure that the waiver is voluntary, knowing, and intelligent. A de-

fendant should 'be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing.' " *Pedockie,* 2006 UT 28, ¶ 26, 137 P.3d 716 (citation omitted). By voluntarily, knowingly, and intelligently waiving his or her right to legal counsel, a defendant accepts the risks of proceeding without legal counsel.

¶ 14 Defendant has not argued on appeal that his decision to proceed pro se was anything other than a voluntary, knowing, and intelligent waiver of his right to legal counsel. Prior to trial, the trial court continually warned Defendant of the risks of proceeding pro se.[5] Despite the trial court's warning, Defendant accepted the risks and elected to proceed to trial without legal counsel to assist him.

■ ¶ 15 Additionally,

[o]ur approach to pro se litigants seeks to balance the procedural demands of litigation and the rights of unrepresented parties. As a general rule, a party who represents himself will be held to the same standard of knowledge and practice as any qualified member of the bar. Nevertheless, because of his lack of technical knowledge of law and procedure [a layperson acting as his or her own attorney] should be accorded every consideration that may reasonably be indulged.

*State v. Winfield,* 2006 UT 4, ¶ 19, 128 P.3d 1171 (second alteration in original) (internal quotation marks omitted). Defendant quoted in his brief only the last sentence of the language from *Winfield,* which is fully quoted above. Defendant thus disregarded the responsibilities he had as a self-represented party and, moreover, failed to specifically identify any particular consideration in which

the trial court should have indulged him but did not.

■ ¶ 16 Third, as the Utah Supreme Court recognized in *Winfield,* the invited error doctrine applies to a pro se, criminal defendant who "appear[s] to have a reasonable knowledge of his rights and of trial procedure." *See id.* ¶ 20. Defendant tries to distinguish his case from *Winfield* by arguing he did not have the same legal experience as the defendant in *Winfield.* While it is true that Defendant had not previously defended himself in another trial as the defendant in *Winfield* had, we conclude that Defendant "appeared to have a reasonable knowledge of his rights and of trial procedure." *See id.*

¶ 17 As evidence that Defendant had "reasonable knowledge of his rights," *see id.,* the record reveals that Defendant argued at trial that he "proclaims the principles found in th[e constitution] and works for their preservation." Furthermore, he made arguments concerning his constitutional rights and even specifically asserted that "the jury shall have the right to determine the law and the fact[s]." Despite his assertions of legal knowledge, Defendant now claims that as a pro se defendant he could not "comprehend these jury instructions, with all their legalese," in order to object or make a conscious decision not to object. While we acknowledge that constitutional and legal issues may be difficult for a pro se defendant to understand, jury instructions are generally written so that a juror, who may not have any legal training, can understand and apply the legal propositions contained within them. In particular, the jury instruction that Defendant now alleges violated his constitutional rights was straightforward and did not state a complex legal principle, but merely

---

**5.** During a pretrial hearing, Defendant asked the trial court to "protect and preserve [his] rights as guaranteed" by the federal and state constitutions. The trial court responded by stating,

I don't know that that includes my undertaking obligations on your part, except to again, continue to inform you, Mr. Cooper, that you need a lawyer, that these are felony charges, and as third degree felonies, they are potential sentences of up to five years at the Utah State Prison. Representing yourself is hazardous at best, but reflective of the file, would indicate

that you could again be benefitted by the appearance of Counsel who could assist you in making the proper presentations to the Court. . . . I don't need to spend any time having spent a tremendous amount of time already talking to you about the idea of having Counsel represent you. I'd indicate simply that the rules of law be followed [including] how we proceed in trial. You should familiarize yourself with them, because if you choose to represent yourself, you will be responsible to comply with those rules as we proceed in court.

recognized the fact that "[t]he document entitled 'Administrative Judgment' recorded on November 15, 2004 in the office of the Utah County Recorder against Lynn W. Davis [wa]s a wrongful lien under Title 38 Chapter of the Utah Code." [6] This instruction may have implicated a more complicated legal issue such as whether the instruction infringed on Defendant's right to have a jury determine the facts of his case. However, this issue is not before us. Defendant acknowledged his right to have a jury decide the facts of his case by going to trial, and he accepted the risk of failing to understand the legal implications of not objecting when at trial he chose to proceed without the assistance of legal counsel. Therefore, we cannot say that Defendant did not "have a reasonable knowledge of his rights," *see id.*

¶ 18 Defendant also "ha[d] a reasonable knowledge . . . of trial procedure," *see id.* Throughout the trial and specifically in regard to the jury instructions, the trial court explained the trial procedure to Defendant. The trial court also gave Defendant a specific opportunity to object to the jury instructions numbered 28 to 34. Additionally, Defendant displayed some knowledge of general trial procedures by filing motions, objecting to the proceedings, reserving the right to make an opening statement until after the State rested, cross-examining witnesses, moving to dismiss at the close of the State's case, and making a closing argument. Therefore, because Defendant "appeared to have a reasonable knowledge of his rights and of trial procedure," *see id.*, we cannot say that his pro se status relieved him of the duty to object to this jury instruction in order to preserve the issue for appeal.

¶ 19 Furthermore, Defendant suggests that the invited error doctrine is not applicable in this case because *State v. Saunders*, 1999 UT 59, 992 P.2d 951, imposes a duty on the prosecutor to ensure a fair trial. However, *Saunders* addressed prosecutorial misconduct, *see id.* ¶ 31, and Defendant has made no claim of misconduct against the prosecutor for proposing jury instruction number 34. Moreover, *Saunders* itself, in discussing a prosecutorial misconduct claim, recognized the application of the invited error doctrine by stating "that an appellate court will review an allegation of plain error despite the lack of a timely objection if the trial court was not led into error." *See id.* ¶ 30.

¶ 20 Therefore, because we conclude that Defendant invited any error regarding the jury instructions, we are foreclosed from reviewing the merits of the jury instruction issue. *See State v. Harper*, 2006 UT App 178, ¶ 12, 136 P.3d 1261 (refusing to review the error under plain error or manifest injustice when "defense counsel invited the alleged error" by stating "he had no objections" to the jury instructions).

## II. Insufficient Evidence Claims

¶ 21 Defendant also argues that the trial court erred when it submitted the charges to the jury because "there was insufficient evidence to establish that [Defendant] filed a wrongful lien as it relates to Judge Davis, and there was insufficient evidence that [Defendant] committed four separate acts of filing a wrongful lien." We will address each in turn.

## A. Insufficient Evidence To Establish a Wrongful Lien Against Judge Davis

¶ 22 Defendant argues that it should have been obvious to the trial court that there was insufficient evidence [7] because

---

6. Importantly, this jury instruction mirrored Judge Davis's testimony that stated "[t]he . . . administrative judgment was declared to be a wrongful lien" and that described the circumstances surrounding the proceeding that made such a declaration. Defendant did not object to Judge Davis's testimony nor did Defendant argue on appeal that such testimony was improper.

7. Defendant's argument recognizes that he did not preserve this issue for appeal. *See State v. Holgate*, 2000 UT 74, ¶¶ 11, 13, 10 P.3d 346

(determining that the issue was not preserved for appeal so any error would need to be reviewed under the plain error standard and that "[t]o demonstrate plain error, a defendant must establish that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful" (alteration and internal quotation marks omitted)). Although Defendant asserts that he preserved this issue for appeal by objecting to the sufficiency of the evidence at the close of the State's case, Defendant actually argued that the case should be dismissed because

no "certain real property" of Judge Davis was identified, and thus, the elements of wrongful lien could not be established for Judge Davis.[8] *See* Utah Code Ann. § 38–9–1(6) (2001) (current version at Utah Code Ann. § 76–6–503 (2008)).

> To demonstrate that the evidence is insufficient, Defendant must first marshal the evidence in support of the verdict. To do this, Defendant must "present, in comprehensive and fastidious order, every scrap of competent evidence introduced at trial which *supports* the very findings [he] resists," and then "ferret out a fatal flaw in the evidence."

*State v. Hodge,* 2008 UT App 409, ¶ 17, 196 P.3d 124 (emphasis and alteration in original) (additional citations and internal quotation marks omitted) (quoting *West Valley City v. Majestic Inv. Co.,* 818 P.2d 1311, 1315 (Utah Ct.App.1991)); *see also State v. Hopkins,* 1999 UT 98, ¶ 14, 989 P.2d 1065 (" 'To demonstrate that the evidence is insufficient to support [a] jury verdict, the one challenging the verdict must marshal the evidence in support of the verdict and then demonstrate that the evidence is insufficient when viewed in the light most favorable to the verdict.' " (alteration in original) (quoting *Crookston v. Fire Ins. Exch.,* 817 P.2d 789, 799 (Utah 1991))).

¶ 23 Although Defendant argues that the Administrative Judgment itself did not identify Judge Davis's real property, Defendant overlooks, and therefore has failed to marshal, ample evidence presented at trial that supports that the Administrative Judgment

"purport[ed] to create a lien or encumbrance on an owner's interest in certain real property," *see* Utah Code Ann. § 38–9–1(6). In other words, testimony was given that the document itself created a wrongful lien against Judge Davis's property without specific reference to Judge Davis's private address. Judge Davis testified to the circumstances surrounding Judge Quinn's determination that the Administrative Judgment created a wrongful lien against Judge Davis's property. In fact, Judge Davis answered a juror's question regarding Judge Quinn's determination that the Administrative Judgment was a wrongful lien. Additionally, on cross-examination Judge Davis testified that he was injured because "any lien placed upon my home and my wife's home impairs my ability to borrow" and if he had attempted to purchase a vehicle or another home "this would have come up, I guarantee you, and they would have said, 'What about this $4.2 million administrative judgment lien, and how are you going to pay that off?' " Judge Davis also responded to Defendant's question about "where in the document [is] the certain real property you own ... named or described," by stating that his property is "[n]ot named, nor is it described as far as I know.... But if a judgment is entered against someone, it doesn't have to describe by me[te]s or bounds or by legal description one's property to in fact be a lien on one's property."

¶ 24 Even assuming these statements were factually or legally inaccurate or were incorrectly admitted, Defendant did not object or

---

"the State has failed to produce evidence ... of injury, loss or harm caused to person or property ... by [Defendant]." The trial court denied that objection because, as the State pointed out, injury was not an element of filing a wrongful lien and, at any rate, there had been "a lot of testimony associated with harm and/or damages." The specific objection Defendant made at trial did not preserve the issue that Defendant now argues on appeal, and thus, any review of the issue must be under the plain error analysis.

**8.** To establish a wrongful lien, the State was required to prove the following:

> A person who intentionally records or files or causes to be recorded or filed a wrongful lien with the county recorder is guilty of a third degree felony if, at the time of recording or filing, the person knowingly had no present, lawful property interest in the real property

> and no reasonable basis to believe he had a present, lawful property interest in the real property.

Utah Code Ann. § 38–9–5(2) (2001). A wrongful lien is defined as

> any document that purports to create a lien or encumbrance on an owner's interest in certain real property and at the time it is recorded or filed is not:
> (a) expressly authorized by this chapter or another state or federal statute;
> (b) authorized by or contained in an order or judgment of a court of competent jurisdiction in the state; or
> (c) signed by or authorized pursuant to a document signed by the owner of the real property.

*Id.* § 38–9–1(6)(a)–(c).

move to strike the testimony during trial. Thus, the jury was able to rely on that testimony to determine whether the Administrative Judgment was a wrongful lien against Judge Davis's real property. In not recognizing his marshaling requirement, Defendant also does not address these statements, or whether they were inaccurate or incorrectly admitted, in his appellate arguments. Because Defendant has failed to properly marshal the evidence supporting the verdict, we consider all the evidence presented to the jury. Based on that evidence, viewed "in a light most favorable to the jury's verdict," the State presented sufficient evidence to support the verdict, and the trial court did not plainly err in submitting the case to the jury. *See State v. Holgate*, 2000 UT 74, ¶ 18, 10 P.3d 346 (stating that under plain error review "we will conclude that the evidence was insufficient when, after viewing the evidence and all inferences drawn therefrom in a light most favorable to the jury's verdict, the evidence 'is sufficiently inconclusive or inherently improbable such that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime for which he or she was convicted,' [and] then ... determine whether the evidentiary defect was so obvious and fundamental that it was plain error to submit the case to the jury" (quoting *State v. Dunn*, 850 P.2d 1201, 1212 (Utah 1993))). Therefore, we affirm Defendant's conviction for filing a wrongful lien against Judge Davis.

### B. Whether Defendant Should Have Been Convicted of Filing One Wrongful Lien or Four Wrongful Liens

▮ ¶ 25 Next, Defendant argues that because he caused only one document to be filed, he should have been charged, at most, with one count of filing a wrongful lien. Although Defendant classifies this as an insufficient evidence claim, what he really challenges is whether the wrongful lien statute supports four convictions when Defendant filed only one document.

▮ ¶ 26 Defendant has not indicated where in the record he raised this issue before the trial court so as to properly preserve it for appeal, *see* Utah R.App. P. 24(a)(5)(A), but instead, asserts that "the trial court plainly erred by not dismissing the other three counts." Consequently, Defendant must establish the elements of plain error.

> To demonstrate plain error, a defendant must establish that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined."

*Holgate*, 2000 UT 74, ¶ 13, 10 P.3d 346 (alteration in original) (quoting *Dunn*, 850 P.2d at 1206).

¶ 27 Whether filing one document that affects several people and each of their interests in their property is one count of filing a wrongful lien, or whether the number of counts is determined by the number of people or properties listed, involves a question of statutory interpretation, which would require us to examine the interests the legislature intended the statute to protect.[9] However,

---

9. While it is not clear what interests the legislature intended to protect under the statute as it existed at the time Defendant committed his criminal actions, *see generally* Utah Code Ann. §§ 38–9–1(6)(a)–(c), –5(2) (2001), the legislature has given some clues to its intent when it subsequently amended the statute, *see* Utah Code Ann. § 76–6–503.5(1)(c) & history (2008). During both the House and Senate debates on the proposed amendment, discussions occurred indicating concern about retaliatory liens being filed against people, namely judges and prosecutors. *See* Floor Debates for SB0047 (Feb. 1, 2005 and Feb. 16, 2005), *available at* http://le.utah.gov/jsp/jdisplay/billaudio.jsp?sess=2005GS&bill=sb

0047&Headers=true. The amendment also expanded the statute's protections to include not only real property but personal property as well. *Compare* Utah Code Ann. § 38–9–6(2) (2001), *with* Utah Code Ann. § 76–6–503.5(1)(c) (2008). This suggests that the legislature intended to protect a person's individual interest in having his or her property encumbered by a wrongful lien, rather than either protecting the property, which would result in one charge for each piece of property no matter how many people's interests were affected, or punishing based on the number of documents filed, even if the one document affected several people's interests. However, interestingly, the renumbered statute was

this precise question was not presented to the trial court. Moreover, the legal analysis that would be required for such a determination makes it clear that any error would not "have been obvious to the trial court," *see id.* Therefore, the trial court did not plainly err in sending four separate wrongful lien counts to the jury for its consideration.

## CONCLUSION

¶ 28 Because Defendant affirmatively represented that he had no objection to jury instruction number 34, he invited the error that he now attempts to establish on appeal. His pro se status does not affect this outcome. Furthermore, Defendant has not established that the trial court plainly erred in either submitting the wrongful lien count related to Judge Davis to the jury or sending four separate wrongful lien counts to the jury.

¶ 29 Affirmed.

¶ 30 WE CONCUR: GREGORY K. ORME and STEPHEN L. ROTH, Judges.

¶ 4 Dismissed.

placed in Title 76, Chapter 6 of the Utah criminal code entitled "offenses against property," *see* Utah Code Ann. § 76–6, rather than in Title 76, Chapter 5, which relates to "offenses against the person," *see id.* § 76–5.