**2024 UT App 179**

## THE UTAH COURT OF APPEALS

GOLDEN SPIKE HERITAGE FOUNDATION,
Appellant,
*v.*
CHAD MONTGOMERY,
Appellee.

Opinion
No. 20230377-CA
Filed December 5, 2024

First District Court, Brigham City Department
The Honorable Brandon J. Maynard
No. 220100008

Zane S. Froerer and Nathan G. S. Jensen,
Attorneys for Appellant

Barton H. Kunz II, Attorney for Appellee

JUDGE JOHN D. LUTHY authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

LUTHY, Judge:

¶1 Golden Spike Heritage Foundation (Golden Spike) sued Chad Montgomery, the Box Elder County Recorder/Surveyor (Montgomery),[1] as well as various landowners. Golden Spike's suit sought to resolve title disputes between itself and the various

---

1. Although Montgomery was sued in his official capacity, we refer to him by name rather than by his title because Golden Spike's action is a petition for extraordinary relief "in the nature of mandamus" under rule 65B(d) of the Utah Rules of Civil Procedure, which form of action "is personal, in that it is directed against the particular officer rather than the office." *Indian Village Trading Post, Inc. v. Bench*, 929 P.2d 367, 370 (Utah Ct. App. 1996).

landowners. It also alleged that Montgomery had failed to perform his statutory duty to maintain accurate plat maps and records and that he had refused to correct errors related to Golden Spike's interests that had been brought to his attention. Accordingly, Golden Spike petitioned the district court for extraordinary relief in the form of an order directing Montgomery to perform his duties.

¶2 The district court dismissed Golden Spike's petition against Montgomery with prejudice after determining that the claims therein were barred by the requirement that a petitioner for extraordinary relief show that "no other plain, speedy and adequate remedy is available," Utah R. Civ. P. 65B(a), and by the statute immunizing county recorders from actions for injuries caused by errors in tract indexes and other instruments, *see* Utah Code § 17-21-6(5)(e). Golden Spike appeals this dismissal.

¶3 We reverse the dismissal of Golden Spike's claims for an order directing Montgomery to accurately depict on the Box Elder County (the County) ownership plats Golden Spike's record title to particular land. We affirm the dismissal of Golden Spike's claims for an order directing Montgomery to mitigate the legal effects of an allegedly erroneous property description included in a 1939 tax deed prepared by the then County recorder. And we remand the matter for further proceedings consistent with this opinion.

BACKGROUND[2]

*The Railroad Right-of-Ways*

¶4 By an act of the United States Congress dated July 1, 1862, the Union Pacific Railroad (Union Pacific) received fee title to a

---

2. Because we are reviewing a motion to dismiss, "we accept the factual allegations in the [petition] as true and recite the facts
(continued…)

400-foot-wide right-of-way[3] running in a generally east-west direction through parts of the County (the Railroad ROW), for the purpose of completing the Transcontinental Railroad. At some point thereafter, the Southern Pacific Transportation Company (Southern Pacific) obtained title to the portion of the Railroad ROW west of the north-south centerline of Section 30, Township 10 North, Range 3 West, Salt Lake Base and Meridian[4] (the Western ROW). Then in April 1992, Southern Pacific transferred the Western ROW to the United States Bureau of Land Management (the BLM) via a recorded quitclaim deed.

¶5     Union Pacific retained title to the portion of the Railroad ROW that runs east of the north-south centerline of Section 30 as

_____

accordingly." *Pead v. Ephraim City*, 2020 UT App 113, n.1, 473 P.3d 175, *cert. denied*, 481 P.3d 1042 (Utah 2021). We also take as true the information contained in copies of various County ownership plats attached to Golden Spike's petition as exhibits to its expert's report. *See generally Rawcliffe v. Anciaux*, 2017 UT 72, ¶ 28 n.16, 416 P.3d 362 (explaining that when a document is attached to a pleading it becomes "part of the pleading" and the court "may review it on a motion to dismiss without converting the motion into a motion for summary judgment"). We include at the end of this opinion a copy of the plat most relevant to this appeal—the one for Section 30, Township 10 North, Range 3 West, Salt Lake Base and Meridian.

3. The term "right-of-way" ordinarily denotes an easement. *See Chournos v. D'Agnillo*, 642 P.2d 710, 712 (Utah 1982) (adopting the rule that when used in a conveyance, "the words 'right of way' . . . denote an easement or servitude rather than an interest in fee simple" unless the instrument "clearly indicates" otherwise). But that is not the meaning intended here. As noted, Congress conveyed the railroad right-of-way to Union Pacific in fee. *See* Act of July 1, 1862, ch. 120, 12 Stat. 489.

4. The survey sections referenced in this opinion are all part of Township 10 North, Range 3 West, Salt Lake Base and Meridian.

well as through Sections 27–29 and 33–36 (the Eastern ROW) until 2000. In June 2000, Union Pacific transferred the Eastern ROW via a recorded quitclaim deed to Golden Spike, "a non-profit organization that has received approval and funding from the United States Congress to build and operate an historical re-creation of the Transcontinental Railroad as it once operated in [the] County, using the land on which the historical Transcontinental Railroad was originally built."

*The Disputed Acreage*

¶6     The Eastern ROW is bordered by various separately owned parcels. In 1934, the owner of an adjacent parcel to the south of the Eastern ROW as it crosses Section 30 (the Adjacent Parcel) drafted a warranty deed for that parcel "with a description that used imprecise terminology to exclude the Eastern ROW as a remainder." In 1939, the then County recorder prepared a tax deed for the Adjacent Parcel "based on a misunderstanding" of the imprecise terminology in the 1934 deed. As a result, the 1939 tax deed

> called out a metes and bounds [description] for the [Adjacent Parcel] on the mistaken assumption that the southern boundary of the Eastern ROW was 50 feet south of the center line of [the] Eastern ROW— possibly marked at that time by a fence—when the correct southern boundary was 200 feet south of the Eastern ROW center line (i.e., 150 feet south of the 50-foot line).

The 1939 deed "thus mistakenly failed to exclude the southern-most 150 feet of the Eastern ROW." At the time, this mistake "was relatively benign" because the description was used "only to describe 'remainders' (i.e., property to be *excluded* from a sale)." However, in 1944, the same mistaken description was used in a decree of distribution of a probate estate to convey the Adjacent Parcel. Because of the mistaken description, the decree indicated

a conveyance of the Adjacent Parcel as though it contained 150 feet's worth of the Eastern ROW (the Disputed Acreage).

¶7     Following the 1944 conveyance, the Adjacent Parcel, including the Disputed Acreage, "was conveyed and subdivided several more times until 2019." In 2019 and thereafter, what was left of the Adjacent Parcel, which still included the Disputed Acreage, was conveyed several additional times and further subdivided. On September 19, 2019, it was conveyed to Colton Rasmussen. On September 27, 2019, Rasmussen conveyed it to Rasmussen A&D LLC (the LLC). The LLC then subdivided the Adjacent Parcel and on December 18, 2020, conveyed the resulting western tract (including a corresponding portion of the Disputed Acreage) to Jeremy Clyde Nelson. Finally, between September 2019 and April 2022, the LLC "subdivided and conveyed what was left of its parcel until it was left with" only the eastern portion of the Disputed Acreage. Thus, today, the western portion of the Disputed Acreage is claimed by Nelson and the eastern portion of the Disputed Acreage is claimed by the LLC, with Golden Spike claiming an ownership interest in all of the Disputed Acreage superior to both Nelson's and the LLC's interests.

*The County Ownership Plats*

¶8     By statute, each county recorder in Utah is required to "prepare and keep ownership plats drawn to a convenient scale, which show the record owners of each tract of land in the county, together with the dimensions of the tract." Utah Code § 17-21-21(1). The County's ownership plats contain some but not all of the current ownership and dimension information related to the Western ROW, the Eastern ROW, and the Disputed Acreage.

¶9     Specifically, the plat for Section 30 identifies the BLM as the owner of both the Western ROW and the Eastern ROW on that plat. The plats for Sections 27–29 and 33–36 do not indicate that Golden Spike is the owner of the Eastern ROW across those plats. Instead, the Eastern ROW is variously designated on those plats as "OLD R.R. RIGHT-A-WAY," "U.P. RR," "C.P. RR,"

"RAILROAD RIGHT OF WAY," "C.P.RR RIGHT-A-WAY," "RAILROAD RIGHT-OF-WAY," and "OLD C.P.RR RIGHT-A-WAY." The plat for Section 36 states that Santa Fe Pacific Realty Corp is the owner of most of the Eastern ROW on that plat and that Bear River Valley Co-op owns a narrow strip of the Eastern ROW on that plat.

¶10    Regarding dimensions, Golden Spike alleges that "[t]he Eastern ROW is incorrectly depicted on the County plat maps as having dimensions that vary from the 400-foot width expressly provided by the [c]ongressional [right-of-way] [g]rant." The plat for the southwest quarter of Section 28 contains a line depicting the center of the railway, but it contains no right-of-way lines and no designation of the right-of-way's width. The plat for the whole of Section 28 includes right-of-way lines but no designation of the width of the right-of-way, and the right-of-way may not be drawn to a scale that reflects a 400-foot width. Golden Spike alleges that the plat for Section 33 "should show a small section of the [Eastern ROW] in the northeast corner but none is shown." On the plat for Section 34, the right-of-way "appears to be plotted at 400 feet wide[,] but the labeling on the plat is difficult to read." The plat for Section 35 contains no designation of the width of the right-of-way, but based on the scale at which it is depicted, it "appears to be . . . approximately 80 to 100 feet wide." The plat for Section 36 indicates that the Eastern ROW is "300 feet in total width."

¶11    As for the Disputed Acreage, the plat for Section 30 indicates that the western portion of the Disputed Acreage is owned by Nelson with an assigned parcel number of 04-074-0020 and that the eastern portion is owned by the LLC with an assigned parcel number of 04-074-0021. The plat for Section 30 contains diagonal hash marks across the Disputed Acreage, along with a notation that the Disputed Acreage is subject to a "CONFLICT."

*The Lawsuit*

¶12    At some point after recording its deed to the Eastern ROW in June 2000, Golden Spike examined the County ownership plats

and other land records and identified "various errors" and approached Montgomery about them. Montgomery "refused to engage in any . . . discussion" and would not "take any action to correct [the] errors." Thus, in January 2022, Golden Spike filed a Complaint and Request for Writ of Mandamus (the Complaint) in district court. Golden Spike named as defendants Montgomery, Rasmussen, the LLC, and any unknown persons "who may claim an interest in [Golden Spike's] real property." Golden Spike alleged claims for quiet title (against all of the defendants), slander of title (against Montgomery and Rasmussen), breach of fiduciary duty (against Rasmussen), and a writ of mandamus (against Montgomery).

*The Motion to Dismiss and the New Petition*

¶13     In March 2022, Montgomery filed a motion to dismiss. He sought dismissal of the slander of title claim against him because Golden Spike had "not filed the notice of claim required by the Governmental Immunity Act of Utah." He sought dismissal of Golden Spike's mandamus claim on two grounds: first, that "common-law mandamus claims like [Golden Spike's] have been abrogated" and, second, that Golden Spike "has other plain, speedy, and adequate remedies."

¶14     In August 2022, before the court ruled on Montgomery's motion to dismiss, Golden Spike filed a new Petition for Extraordinary Mandamus Relief (the New Petition). The parties and the court agreed to construe the New Petition as a motion for leave to amend the Complaint. Montgomery initially appeared to waive any argument regarding the motion's timeliness but reserved the right to challenge the motion on the ground that the New Petition could not survive a motion to dismiss and, thus, that replacing the mandamus claim in the Complaint with the mandamus claim in the New Petition would be futile. The court then invited the parties to brief the issue of whether the mandamus claim in the New Petition could survive a motion to dismiss.

¶15   In the New Petition, Golden Spike indicated that it was requesting extraordinary mandamus relief not under the common law, but under rule 65B(d)(2)(B) of the Utah Rules of Civil Procedure, which permits "[a]ppropriate relief . . . where [a] . . . person has failed to perform an act required by law as a duty of office." In support of this request, Golden Spike again alleged errors in the "County records relating to [its] title to the Eastern ROW [that] were caused by [Montgomery] and his predecessors in office failing to perform their official statutory dut[ies]." Golden Spike again alleged that it had asked Montgomery "to fulfill his statutory duty to correct the mistakes" but that he "continued to refuse, demanding [instead] that [Golden Spike] first bring a court order requiring him to do so." Golden Spike then identified the following "errors," together with the corrective orders it sought from the court:

Claim 1

**ERROR:** [Golden Spike's] Vesting Deed . . . , by which [Union Pacific] conveyed to [Golden Spike] fee title to the Eastern ROW, is not reflected on the current plat map. Specifically, the plats depicting the entire Eastern ROW fail to identify [Golden Spike] as the title holder or to assign a county Parcel No. to the Eastern ROW. . . . **CORRECTION:** [Montgomery] should correct this error by changing the plat map (and all other County resources required to reflect the true chain of title) to accurately reflect [Golden Spike's] title to the Eastern ROW as identified in [Golden Spike's] Vesting Deed.

Claim 2

**ERROR:** The BLM's Vesting Deed[,] . . . by which [Union Pacific's] successor conveyed to [the] BLM fee title to the Western ROW[,] is incorrectly reflected on the current plat map, which shows [the]

BLM's title to the Western ROW extending east of the Section 30 center line into the Eastern ROW. **CORRECTION:** [Montgomery] should correct this error by changing the plat map (and all other County resources required to reflect the true chain of title) to accurately reflect [the] BLM's title as including only the Western ROW.

### Claim 3

**ERROR:** The [1939 mistaken description of the Adjacent Parcel] is an error resulting from the internal practices of the [County] Recorder's Office, and all conveyances of title to the [Disputed] Acreage have been void—without a connection to the true root title held by [Union Pacific], clouding [Golden Spike's] title to the Eastern ROW. **CORRECTION:** [Montgomery] should correct this error by taking all action available to mitigate the effects of the County's contribution to [Golden Spike's] clouded title, including the following:

a. [Montgomery] should change the plat map (and all other County resources required to reflect the true chain of title) to identify [Golden Spike] as holding title to the [Disputed] Acreage.

b. [Montgomery] should take all steps necessary to cause the [County] Commission to retire Parcel No. 04-074-0021 from the tax system.

c. [Montgomery] should take all steps necessary to cause Parcel No. 04-074-0020 to be abandoned and/or retired.

Claim 4

> **ERROR:** The Eastern ROW is incorrectly depicted on the [County] plat maps as having dimensions that vary from the continuous 400-foot width expressly provided in the [c]ongressional [right-of-way] [g]rant. **CORRECTION:** [Montgomery] should correct this error by revising the [County] plat maps to reflect the correct dimensions of the Eastern ROW.

¶16  Montgomery submitted a supplemental memorandum in which he argued that if the New Petition is viewed as an amendment to the Complaint, because it was filed "without stipulation or leave of [c]ourt" more than twenty-one days after service of the Complaint and more than twenty-one days after service of Montgomery's motion to dismiss, it was "improper" and "should be dismissed or struck." *See* Utah R. Civ. P. 15(a) (stating that "[a] party may amend its pleading once as a matter of course within . . . 21 days after serving it" or within "21 days after service of a motion under Rule 12(b)" and that "[i]n all other cases, a party may amend its pleading only with the court's permission or the opposing party's written consent").

¶17  Montgomery further argued that, even if deemed to be a motion to amend the Complaint, the New Petition "would still fail because it fails to show that other plain, speedy, and adequate relief is unavailable." He reasoned that the relevant question is "whether there is some alternative way" for Golden Spike to achieve its desired outcome and that Golden Spike's "complaint alleging quiet title and slander of title exposes two alternatives: If [Golden Spike] prevails on either claim, the result will be an order it can record, which the recorder will record and by law index." Montgomery argued that "[t]his alternative route to the same remedy renders the extraordinary relief of mandamus unavailable." Finally, Montgomery contended that if the New Petition is viewed as a motion to amend, it should be "denied as futile" because the claim for extraordinary relief in the New

Petition is barred by Utah Code section 17-21-6(5)(e), which states, "A person may not bring an action against a recorder for injuries or damages suffered as a result of information contained in an instrument recorded in a tract index or other index that is required by this section despite errors, omissions, or defects in the instrument."[5]

*The District Court's Order*

¶18    The district court held a hearing on Montgomery's motion to dismiss and the parties' supplemental briefing. Then in March 2023, it issued an order granting Montgomery's motion to dismiss. The court dismissed Golden Spike's slander of title claim against Montgomery without prejudice, concluding that the court lacked subject matter jurisdiction over the claim "because the required notice of claim was not provided." The court dismissed Golden Spike's claim for mandamus relief with prejudice. It reasoned that "even if [Golden Spike's] mandamus claim is considered amended by the New Petition," it must be dismissed because (1) Golden Spike "fail[ed] to show that no other plain, speedy, and adequate remedy is available" and (2) "the petition for writ is prohibited by Utah Code section 17-21-6[]." As to the first ground, the court agreed with Montgomery that a petitioner for extraordinary relief has a pleading burden to "show[] that there is no other plain, speedy, and adequate remedy available," and it determined that Golden Spike's allegations did not meet that burden. Regarding the second ground, the court explained, "It appears to the court that [Golden Spike] brings its mandamus claim to address an alleged injury[] and that it is therefore prohibited under section 17-21-6[]."

---

5. When this matter was before the district court, this provision was contained in Utah Code section 17-21-6(3)(e). *See* Utah Code § 17-21-6(3)(e) (2023). Because the language of this provision was not altered when it was renumbered, we cite the current version of the statute.

¶19    As to Montgomery's argument that if the New Petition was construed as an amendment to the Complaint it should be denied on the additional ground that it was filed without stipulation or leave of the court more than twenty-one days after service of the Complaint and more than twenty-one days after service of Montgomery's motion to dismiss, the court stated that it "reject[ed] Montgomery's arguments regarding the New Petition's untimeliness and lack of leave or agreement." But it also did not affirmatively grant Golden Spike leave to amend the Complaint.

¶20    After the court granted Montgomery's motion to dismiss, Golden Spike sought and obtained an order certifying the district court's order of dismissal of its claims against Montgomery as final pursuant to rule 54(b) of the Utah Rules of Civil Procedure, which allowed Golden Spike to appeal that dismissal while still pursuing its claims against the other defendants in the district court. Golden Spike then filed a timely notice of appeal.

ISSUE AND STANDARD OF REVIEW

¶21    On appeal, Golden Spike does not challenge the dismissal of its slander of title claim against Montgomery. Nor does it challenge the dismissal of its claim for mandamus relief as pled in the Complaint. Instead, Golden Spike appeals the district court's decision to dismiss its mandamus claim even if that claim is considered amended by the New Petition. Thus, for practical purposes, Golden Spike appeals the dismissal of the mandamus claim as pled in the New Petition. "Because a trial court's grant or denial of a motion to dismiss is a question of law, the standard of review is correctness. This standard of review grants no deference to the decision of the district court." *Moulding Invs., LLC v. Box Elder County*, 2024 UT App 23, ¶ 21, 545 P.3d 781 (cleaned up).

ANALYSIS

¶22    We begin by outlining the general framework for our analysis. In its New Petition, Golden Spike alleges a list of "errors" by Montgomery, together with a slate of corresponding mandates that it asks to be issued to correct those errors. The alleged errors and corresponding requested mandates can be divided into two groups.

¶23    The first group is related to Montgomery's statutory duty to "prepare and keep ownership plats drawn to a convenient scale, which show the record owners of each tract of land in the [C]ounty, together with the dimensions of the tract." Utah Code § 17-21-21(1). Golden Spike alleges that Montgomery has failed to comply with this duty of his office by not accurately depicting the Eastern ROW and not accurately depicting Golden Spike's record title to the Eastern ROW on the County ownership plats. To address these alleged errors, Golden Spike requests a set of mandates directing Montgomery to correct the ownership plats so that they accurately depict Golden Spike's *record* title to the Eastern ROW.

¶24    The second group of alleged errors and corresponding requested mandates is related to the notion that Montgomery has a duty to correct errors in the instruments he records, particularly if those errors are the product of action taken by a predecessor County recorder. In this regard, Golden Spike asserts that the allegedly erroneous legal description appearing in the 1939 tax deed for the Adjacent Parcel "result[ed] from the internal practices of the [County] Recorder's Office" and that "all [subsequent] conveyances of title to the [Disputed] Acreage have been void—without a connection to the true root title held by [Union Pacific], [thus] clouding [Golden Spike's] title to the Eastern ROW." In connection with these allegations, Golden Spike requests a set of mandates directing Montgomery to change the ownership plats "and all other County resources required to reflect the true chain of title" so that they depict no conflicting claims to the Disputed Acreage.

¶25   In its ruling on Montgomery's motion to dismiss, the district court did not distinguish between the two groups of alleged errors and requested mandates. In the analysis that follows, we do. We first address Golden Spike's first group of alleged errors and requested mandates—the group aimed at obtaining an accurate depiction on the County ownership plats of Golden Spike's record title to the Eastern ROW. As to this portion of Golden Spike's claim for extraordinary relief, we reverse the decision of the district court and remand the matter for further proceedings. We then address Golden Spike's second group of alleged errors and corresponding requested mandates—the group aimed at, among other things, omitting the depiction of any competing claims to the Disputed Acreage on the ownership plats and, thus, apparently establishing Golden Spike as the sole legal title holder to the Disputed Acreage. As to this portion of Golden Spike's claim for extraordinary relief, we affirm the decision of the district court, although we do so on grounds different from those relied on by the district court. *See generally Bailey v. Bayles*, 2002 UT 58, ¶ 20, 52 P.3d 1158 ("[A]n appellate court may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record.").

## I. Mandates to Accurately Depict Golden Spike's Record Title

¶26   Golden Spike petitioned for extraordinary relief under rule 65B(d) of the Utah Rules of Civil Procedure. "[R]ule 65B(d) is the equivalent of a common law petition for a writ of mandamus and provides the equivalent remedy." *Hogs R Us v. Town of Fairfield*, 2009 UT 21, ¶ 11, 207 P.3d 1221. "The common law writ of mandamus was designed to compel a person to perform a legal duty incumbent on him by virtue of his office or as required by law." *Id.* (cleaned up). A rule 65B(d) petitioner may receive relief by establishing (1) that it is "aggrieved or [its] interests are threatened" by a person's "fail[ure] to perform an act required by law as a duty of office" and (2) that "no other plain, speedy and adequate remedy is available." Utah R. Civ. P. 65B(a), (d).

¶27 Golden Spike alleges that it holds record title to the Eastern ROW and that the whole of the Eastern ROW is 400 feet wide. It further alleges that Montgomery is the County recorder and that, by virtue of that office, he is required to "prepare and keep ownership plats drawn to a convenient scale, which show the record owners of each tract of land in the [C]ounty, together with the dimensions of the tract." Utah Code § 17-21-21(1). Golden Spike then alleges that Montgomery has failed to comply with this duty of his office by (1) not depicting Golden Spike's record ownership of the Eastern ROW in Sections 27–30 and 33–36 on the County ownership plats, (2) incorrectly indicating on the plat for Section 30 that the BLM is the record owner of the segment of the Eastern ROW east of the north-south centerline of Section 30, and (3) incorrectly depicting the width of the Eastern ROW as something other than 400 feet wide in various locations on the ownership plats. If proved, these allegations would plainly establish that Montgomery has failed to perform ministerial acts that are required of him as a duty of his office.

¶28 The district court nevertheless concluded that for two reasons Golden Spike may not seek extraordinary relief to compel Montgomery to perform the duties of his office. First, the court concluded that Golden Spike has not adequately alleged the lack of another plain, speedy, and adequate remedy. Second, it concluded that Golden Spike "brings its mandamus claim to address an alleged injury, and that [the claim] is therefore prohibited" by Utah law. *See generally id.* § 17-21-6(5)(e) (prohibiting any "action against a recorder for injuries or damages suffered as a result of information contained in an instrument recorded in a tract index or other [required] index"). We hold that these conclusions were in error when it comes to Montgomery's alleged failures to accurately depict on the ownership plats Golden Spike's record title to the Eastern ROW. We address each of these conclusions in turn.

A.    Plain, Speedy, and Adequate Remedy

¶29    As to whether Golden Spike has another plain, speedy, and adequate remedy for Montgomery's alleged failure to fulfill the identified duties of his office, our supreme court has long held that a petition for extraordinary relief in the nature of mandamus is an appropriate mechanism to compel an officer to perform a non-discretionary ministerial duty. *See, e.g., Hogs R Us*, 2009 UT 21, ¶ 11 ("A citizen can seek extraordinary relief to compel an officer or town officials to perform a duty, a ministerial act or an administrative act, about which it would have no discretion . . . ." (cleaned up)); *Rose v. Plymouth Town*, 173 P.2d 285, 286 (Utah 1946) (same). We therefore begin with the assumption that when a petitioner has pled that a public official has failed to perform a non-discretionary, ministerial duty of his or her office—as Golden Spike has pled here—the petitioner has no other plain, speedy, or adequate remedy than to ask the district court to issue a mandate to the official to perform the duty.

¶30    Montgomery cites *Ogden City v. Adam*, 635 P.2d 70 (Utah 1981) (per curiam), for the proposition that a declaratory judgment action provides an alternative plain, speedy, and adequate remedy for compelling a public official to fulfill his or her statutory duties. In *Adam*, Ogden City and Weber County had created a joint building authority "for the purpose of acquiring the Ben Lomond Hotel and readying it for occupancy as business offices," and they approved a bond issue for that purpose. *Id.* at 71. The city and county "intend[ed] to partially occupy, along with other tenants, the proposed office building, and to pay monthly rental therefor" out of "their respective general obligation funds." *Id.* However, the city recorder and county clerk believed that the leases and bond issue were unconstitutional, and they therefore refused to affix the city and county seals on the leases. *See id.* The city and its mayor, the county and the chair of its board of commissioners, and the building authority and its president (who was also the chair of the county's board of commissioners) petitioned the Utah Supreme Court for "an extraordinary writ compelling [the city recorder and the county

clerk] to attest to and affix the seal of Ogden City . . . and Weber County . . . to [the] lease agreements." *Id.* The supreme court denied the petition on the following grounds:

> An extraordinary writ will issue only where no other plain, speedy and adequate remedy exists. In the instant case, no such showing has been made. No facts are stated which reflect the necessity for immediate relief, nor has there been a showing of irreparable harm or loss by anyone. Further, it has not been demonstrated that the remedies available at law are less than adequate. On the contrary, it appears that the remedy afforded at law under the Declaratory Judgment Act is not only adequate, but appropriate as well, since it would accommodate a trial and the determination of facts should such issues arise during the course of the proceedings.

*Id.* at 71–72 (cleaned up). Montgomery contends that *Adam* requires a holding here that Golden Spike has failed "to plead adequate facts" to show that it has no other plain, speedy, and adequate remedy than an extraordinary writ because Golden Spike could instead pursue a declaratory judgment action against Montgomery. However, *Adam* is distinguishable.

¶31　First, the petition in *Adam* was filed in the supreme court, a venue that generally "is not equipped . . . to take evidence." *State v. Larocco*, 649 P.2d 2, 3 (Utah 1982) (per curiam). The *Adam* court relied on this fact when it noted that a declaratory judgment action in district court "would accommodate a trial and the determination of facts." 635 P.2d at 72. Here, instead of filing its petition for extraordinary relief in an appellate court pursuant to rule 19 of the Utah Rules of Appellate Procedure, Golden Spike filed its petition in the district court—which is amply equipped to take evidence and make factual findings—pursuant to rule 65B of the Utah Rules of Civil Procedure.

¶32 Additionally, the substantive issue in *Adam* was whether a bond and certain leases were constitutional. In contrast, Golden Spike's petition—at least as to the first group of alleged errors and requested mandates—alleges no constitutional issue but, rather, the simple failure of a public official to perform his undisputed statutory duty. And in response to those allegations, Montgomery asserts no constitutional barrier to his compliance with his statutory duty.

¶33 Were we to hold that in the circumstances of this case a declaratory judgment action provides a plain, speedy, and adequate alternative to a rule 65B(d) petition and therefore precludes such a petition, we would render rule 65B(d) a practical nullity for obtaining the precise type of relief it has long been understood to afford. For these reasons, we conclude that *Adam* is distinguishable on the grounds noted and that by pleading Montgomery's simple failure to perform an undisputed, non-discretionary, ministerial duty of his office, Golden Spike has adequately demonstrated the lack of another plain, speedy, and adequate remedy.

B.     Prohibition on Actions Against a Recorder for Injuries

¶34 The district court also concluded that Golden Spike's petition is prohibited by Utah Code section 17-21-6(5)(e), which states that "[a] person may not bring an action against a recorder for injuries or damages suffered as a result of information contained in an instrument recorded in a tract index or other index that is required by this section despite errors, omissions, or defects in the instrument." The court's reasoning on this point is not extensive, as it stated only, "The court is not persuaded that [Golden Spike] does not bring its action for an injury. It appears to the court that [Golden Spike] brings its mandamus claim to address an alleged injury, and that [the claim] is therefore prohibited under section 17-21-6[]."

¶35 But at least as to Montgomery's alleged failure to accurately depict Golden Spike's record title to the Eastern ROW

on the County ownership plats, Golden Spike identifies no injury as a result of Montgomery's alleged failures. Most notably, Golden Spike does not claim that Montgomery's alleged failure to accurately depict Golden Spike's record title has resulted in a cloud on that title or a loss of Golden Spike's legal title. In fact, in his arguments to the district court, Montgomery essentially acknowledged that a claim for extraordinary relief based on a recorder's simple failure to comply with a ministerial duty, without more, is not a claim for injury. After articulating his section 17-21-6(5)(e) argument, Montgomery conceded that if Golden Spike were to obtain an order quieting title to the Disputed Acreage in Golden Spike and "Montgomery refused to record or index the order or quieting deed"—in other words, if all that Montgomery did was fail to comply with his ministerial duties—then a petition for extraordinary relief "might . . . ripen" and would not be prohibited by section 17-21-6(5)(e). We agree and hold that an action that alleges nothing more than that a county recorder has not accurately depicted on the county's ownership plats the record title memorialized in a recorded instrument is not an action for injuries or damages and is therefore not barred by the cited statute.

C.    Conclusion

¶36    For the foregoing reasons, we reverse the district court's dismissal of Golden Spike's petition for extraordinary relief to the extent that it seeks the following relief in response to its allegations that Montgomery has not caused the County ownership plats to accurately depict the dimensions of the Eastern ROW and Golden Spike's record title to it:

- an order directing Montgomery to accurately depict on the County ownership plats Golden Spike's record title to the Eastern ROW as identified in Golden Spike's vesting deed;

- an order directing Montgomery to change the County ownership plats to accurately reflect the BLM's record title to only the Western ROW; and

- an order directing Montgomery to change the County ownership plats to accurately reflect the record width of the Eastern ROW.[6]

## II. Mandates to Confirm Golden Spike's Legal Title

¶37    We now address the portion of Golden Spike's petition that rests on the allegation that the County recorder in 1939 employed an erroneous legal description in a tax deed and the assertion that Montgomery has a duty to mitigate the legal effects of that alleged error.

¶38    In its petition, Golden Spike alleges that as County recorder, Montgomery "is custodian of all recorded documents and records required by law to be recorded" in the County. Utah Code § 17-21-1(1). It alleges that as the custodian, Montgomery is required to "protect[] . . . recorded documents and records in [his] custody." *Id.* § 17-21-1(2)(a). And it alleges that Montgomery is required to "keep a tract index" that "shows a true chain of title to each tract or parcel." *Id.* § 17-21-6(1)(f), (5)(a). From these statutory duties, Golden Spike extrapolates that Montgomery has

---

6. We do not hold that every page of a plat book over which a right-of-way or other parcel passes must contain a dimensional notation and indication of ownership, so long as the involved plats taken together clearly and accurately convey the required information. We likewise decline to impose a standard that allows for extraordinary relief on the basis that parcel boundaries—particularly those on hand-drawn plats—are not drawn with absolute precision and perfectly to scale. If the plats employ "a convenient scale" and discernably "show the record owners of each tract of land in the county, together with the dimensions of the tract," Utah Code § 17-21-21(1), the recorder has complied with the statutory mandate. We leave for the district court to determine whether that standard has been met with regard to the County plats depicting the Eastern ROW and Golden Spike's record title to it.

the further duty to "maintain and protect the *accuracy* of the [recorded] records" themselves.

¶39 Based on that asserted duty, Golden Spike requests extraordinary relief in the form of mandates directing Montgomery to "correct" the allegedly erroneous inclusion in the 1939 tax deed for the Adjacent Parcel by the then County recorder by "taking all action available to mitigate the effects of the County's contribution to [Golden Spike's] clouded title." Of course, the perpetuation of that allegedly erroneous legal description has resulted in Nelson holding record title to the western portion of the Disputed Acreage (with an assigned parcel number of 04-074-0020) and the LLC holding record title to the eastern portion of the Disputed Acreage (with an assigned parcel number of 04-074-0021). Thus, Golden Spike specifically asks that Montgomery be mandated to (1) change, in addition to the plat map, "all other County resources required to reflect the true chain of title . . . to identify [Golden Spike] as holding title to the [Disputed] Acreage," (2) "take all steps necessary to cause the [County] Commission to retire Parcel No. 04-074-0021 from the tax system," and (3) "take all steps necessary to cause Parcel No. 04-074-0020 to be abandoned and/or retired." This relief is not available to Golden Spike under rule 65B(d).

¶40 As to the first of these requested mandates, it is not clear what Golden Spike means when it asks that Montgomery be mandated to change "all other County resources required to reflect the true chain of title . . . to identify [Golden Spike] as holding title to the [Disputed] Acreage." To the extent that Golden Spike may be requesting a mandate for Montgomery to change the contents of the 1939 tax deed or any other recorded instrument, we observe that after "accept[ing] . . . an instrument entitled to be recorded, [a] recorder may not . . . alter, change, obliterate, or insert any new matter in any instrument of record." *Id.* § 17-21-17(1)(a). Because this prohibition is unequivocal, it applies even if the recorder prepared the recorded instrument in the first place. *See id.* It also applies even if the recorded

instrument contains a description that is traceable to an instrument prepared by the recorder. *See id.*

¶41 Moreover, a county recorder's duties do not include making determinations of *legal* title, and a county's ownership plats are not determinative of who holds *legal* title. A county recorder's duty is to maintain the instruments purporting to transfer or otherwise affect legal title that have been submitted to the recorder's office, *see id.* § 17-21-1, and to then "prepare and keep ownership plats . . . which show the *record* owners of each tract," *id.* § 17-21-21 (emphasis added). The authority to determine the *legal* owner in the event of conflicting claims of *record* title is given to the courts. *See id.* § 78B-6-1301 ("A person may bring [a civil] action against another person to determine rights, interests, or claims to . . . real property."); *id.* § 78A-5-102(1) ("Except as otherwise provided by the Utah Constitution or by statute, the district court has original jurisdiction in all matters civil . . . ."). Thus, where more than one person has recorded an instrument purporting to grant a currently controlling, present interest to the same tract of land, until a judicial decree resolving the conflict has been recorded, it is the recorder's duty to maintain an ownership plat that shows the conflicting claims.

¶42 Golden Spike's own allegations (and the plat for Section 30) confirm that Montgomery is complying with his statutory duty to show conflicting claims of record title to the Disputed Acreage by noting on the plat for Section 30 a "CONFLICT" between Nelson and the LLC on the one hand and the holder of record title to the Eastern ROW on the other. Given the current state of the public record, Golden Spike simply is not entitled to an order mandating Montgomery to remove any indication of Nelson's and the LLC's record titles to the Disputed Acreage. Just the opposite is true: Montgomery's duty is to show the conflicting claims on the affected plat until a judicial decree resolving the conflict is recorded. This is true regardless of whether the relief Golden Spike requests is sought through a declaratory judgment action or a petition for extraordinary relief.

¶43 Finally, Golden Spike has cited no authority for or otherwise adequately briefed its implicit argument that a county recorder has either the duty or the authority to retire particular parcels from a county's tax system or to cause county officials with authority over the tax system to retire or abandon a parcel.

¶44 For the foregoing reasons, we affirm the district court's dismissal of Golden Spike's petition for extraordinary relief to the extent that it seeks the following relief in response to its allegation that Montgomery has a duty to mitigate the effects of the allegedly erroneous property description included in the 1939 tax deed for the Adjacent Property by the then County recorder:

- an order directing Montgomery to change the ownership plats (and all other County resources required to reflect the true chain of title) to identify only Golden Spike as holding title to the Disputed Acreage;

- an order directing Montgomery to take all steps necessary to cause the County Commission to retire Parcel No. 04-074-0021 from the tax system; and

- an order directing Montgomery to take all steps necessary to cause Parcel No. 04-074-0020 to be abandoned and/or retired.[7]

---

7. Broadly speaking, Golden Spike's goal with the underlying litigation plainly appears to be to clear its title to the Disputed Acreage. And because courts are given the authority to quiet title when there are conflicting claims to a particular parcel, a quiet title action provides Golden Spike with a plain, speedy, and adequate avenue for pursuing that broad objective. Thus, the district court's dismissal of Golden Spike's petition on the ground that Golden Spike has another plain, speedy, and adequate remedy for obtaining the relief it seeks is somewhat understandable. However, Golden Spike's petition for

(continued…)

CONCLUSION

¶45    We reverse the district court's dismissal of Golden Spike's petition for extraordinary relief to the extent that it seeks an order directing Montgomery to accurately depict on the County ownership plats Golden Spike's record title to the Eastern ROW. We affirm the district court's dismissal of Golden Spike's petition for extraordinary relief to the extent that it seeks an order directing Montgomery to mitigate the legal effects of the allegedly erroneous property description included in the 1939 tax deed for the Adjacent Property. And we remand the matter to the district court for further proceedings consistent with this opinion.[8]

————————

mandamus relief does not seek a judicial determination that it holds sole legal title to the Disputed Acreage; instead, it seeks an order compelling Montgomery to alter ownership plats and other County records to eliminate all other parties' record claims to the Disputed Acreage. And that is relief to which Golden Spike is not entitled, regardless of whether it is sought through quiet title or mandamus proceedings. For this reason, we do not resolve this appeal on the ground that Golden Spike has another plain, speedy, and adequate remedy for obtaining the relief it seeks.

8. To the extent that the district court deferred ruling on whether the New Petition when viewed as a motion to amend the Complaint should be granted, such a decision may now be made in the first instance by the district court as part of its further proceedings.

THIS OWNERSHIP PLAT IS FOR
REFERENCE PURPOSES ONLY.
NO LIABILITY IS ASSUMED FOR
ACCURACY OR VARIATIONS WITH
THE ACTUAL SURVEY.

SCALE 1"=400'

PREFIX 04-074 TAX UNIT 05

MAP NUMBER: 04-074



Unofficial Copy